J asee", J.
This appeal brings up for review a construction of article 23-A of the General Business Law, popularly known as the Martin Act.
*96 These companion proceedings had their genesis in the well-known salad oil scandal in which Anthony De Angelis and his corporate vehicle, Allied Crude Vegetable Oil Refining Corporation (Allied), were involved. The scandal became known to the public in November, 1963, and resulted in more than $200,000,000 in losses to investors and financial institutions.
After an extended three-year investigation, the Attorney-General brought an action under article 23-A of the General Business Law against Bunge Corporation (Bunge), its president Walter Charles Klein, and one of its vice-presidents Richard D. Forti.
Briefly stated, the Attorney-General’s complaint alleged that in 1962 the defendants learned that Allied was missing millions of dollars worth of vegetable oils pledged to Bunge and others through warehouse receipts; that Allied was insolvent; that as members of the New York Produce Exchange the defendants were under a duty to disclose this knowledge to the exchange and to the public generally, but such disclosure was not made; that the defendants used this knowledge to manipulate the market in soybean oil futures, thereby making a profit of $1,500,000'; and that, by concealing their knowledge, Allied was permitted to continue its fraudulent practices for 14 additional months and increase its outstanding fraudulent warehouse receipts from $8,000,000 to $82,000,000.
The complaint was served, but not filed, on February 14,1967. The first public announcement of the action was made by the Attorney-General in a press release on March 13, 1967. On the same date, the action was terminated by the filing of the pleadings therein and a consent judgment agreed to between the Attorney-General and the defendants, wherein it was stipulated not only that the defendants denied the factual allegations of the complaint, but also that the consent judgment would not be deemed an acknowledgment of any violation of law. The defendants, on the other hand, agreed they would not thereafter commit any of the fraudulent acts or ignore the duties to the public, enumerated in the complaint. In addition, the defendants agreed to severally pay $2,000 as costs in the action.
The Attorney-General’s complaint contained 12 causes of action, the first 11 of which were brought under the Martin Act. The twelfth cause of action was brought pursuant to section *97 63 (subd. 12) of the Executive Law and is not pertinent to the present proceeding. The consent judgment related only to the first cause of action, and the second through twelfth causes of action were discontinued under the terms of the consent judgment.
- After the Attorney-General’s action was terminated, appellants, a bank and the insurance companies who will have to bear many of the losses generated by De Angelis ’ swindle, sought to vacate the consent judgment, reopen the action, and appoint, under section 353-a of the General Business Law, a receiver for that portion of the property of Bunge which had been obtained through the fraudulent practices with which Bunge was charged.
Alternatively, the appellants requested the court issue an order in the nature of mandamus, pursuant to CPLR article 78, directing the Attorney-General to apply for a receiver. In addition, appellants requested the court direct the Attorney-General to assist appellants in establishing any claim they might have to the property of Bunge and to make available to appellants the evidence gathered in the course of the Attorney-General’s investigation.
Special Term dismissed the article 78 petitions and the motions to reopen and intervene, and the Appellate Division unanimously affirmed.
In denying the motions and dismissing the petition, the courts below held that the Attorney-General’s exercise of authority in prosecuting a Martin Act action was not subject to judicial review, and that the Attorney-General’s sole control of such action excluded the effort by appellants to secure the appointment of a Martin Act receiver in the action which had been concluded by the consent judgment. With all of these conclusions we agree.
We have long recognized that, when a statute authorizes the Attorney-General to institute a suit, the exercise of such authority is not subject to judicial review. (People v. Ballard, 134 N. Y. 269, 293.) Appellants do not contend that the Attorney-General ’s discretion to commence an action pursuant to statute is subject to judicial review, but argue that, the action having been instituted, the exercise of discretion in its disposition is subject to judicial review.
*98 We cannot agree that the Legislature intended to grant the courts the authority to judicially review the Attorney-General’s exercise of discretion in dealing with a Martin Act violation. Implicit in any authority to commence an action is power over its disposition by discontinuance or otherwise. In our view, in the absence of a clear expression by the Legislature to the. contrary (e.g., General Business Law, § 399-n), the discretion of the Attorney-General in maintaining or discontinuing an action may not be made the subject of inquiry by the courts.
Indeed the Legislature, in enacting section 63 (subd. 15) of the Executive Law, dealing with the Attorney-General’s authority in conducting actions such as here under the Martin Act, has clearly defined the Attorney-General’s responsibility as follows: “ 15. In any case where the attorney-general has authority to institute a civil action or proceeding in connection with the enforcement of a law of this state, in lieu thereof he may accept an assurance of discontinuance of any act or practice in violation of such law from any person engaged or who has engaged in such act or practice
To sustain appellants’ contention would require this court to sanction a remedy inconsistent with the expressed intent of the Legislature.
The appellants further contend that, although the Attorney-General is the State’s chief law officer, he is, insofar as the Martin Act is concerned, an administrative officer and his activities are subject to judicial review in an article 78 proceeding to the same extent as the activities of any administrative officer.
Certainly, every action of an executive, as distinguished from a judicial or legislative official, is administrative, but it does not follow that every such act is subject to judicial review. Appellants’ reliance upon Dunham v. Ottinger (243 N. Y. 423) and Carlisle v. Bennett (268 N. Y. 212) in this regard is misplaced.
Dunham and Carlisle merely hold that the Attorney-General is an executive officer performing an administrative duty when conducting an investigation under section 352 of the General Business Law and, as such, his actions (e.g., in ordering production of books and records for examination) are subject to limited review. However, the cases cited do not cast the Attorney-General as an administrative official when prosecuting a suit under the Martin Act. As noted in Dunham v. Ottinger *99 (supra, at p. 432), “ [The Martin Act’s] general plan and scope seem to be perfectly plain. The Attorney-General as an executive official of the State is given the power by appropriate injunctive action to restrain any person who is engaged or who is about to engage in the business of selling the securities and commodities designated in the statute by means and aid of fraudulent methods and practices which likewise are therein defined.”
Finally, appellants contend that, even if in a Martin Act suit the Attorney-General is a legal officer and not an administrative officer, the exercise of his discretion with respect to the appointment of a receiver is nonetheless subject to judicial review and intervention. This simply is not true. (Gaynor v. Rockefeller, 15 N Y 2d 120, 131; Matter of Perazzo v. Lindsay, 23 N Y 2d 764.)
As an alternative to judicial review of the Attorney-General’s actions, the appellants claim they should have been allowed to intervene in the suit and have a receiver appointed, or that the court should have appointed a receiver on its own motion.
Section 353-a of the General Business Law[1] provides that the court may appoint a receiver at any stage of the proceed *100 ings to take control of any property derived by the defendant through fraudulent practices and to liquidate ‘[1] such property or any part thereof for the benefit of all persons intervening in the said action and establishing an interest in such property.”
However, the primary purpose of a suit brought under the Martin Act is to enjoin the defendant’s fraudulent activity; the sequestration of property is merely incidental to such an action. The only reason noted in the Martin Act for intervention of private persons in such a suit is to prove their ownership of already sequestered property. It is apparent from the scheme of the act that this was the only purpose intended for intervention. The Attorney-General, in prosecuting a Martin Act suit, is representing the People of the State at large—not the interests of a few individuals. In representing the People, the Attorney-General must be given the personal discretion to decide upon the remedies which he wishes to employ. To allow intervention by private individuals to further their own private aims might seriously jeopardize the purpose of the Attorney-General’s suit. Contrary to the appellants’ suggestion, the court may not, sua sponte, appoint a receiver, for this would also remove necessary prosecutorial discretion from the hands of the Attorney-General.
The inappropriateness of private intervention or sua sponte appointment by the court of a receiver is particularly apparent in the situation before us. The complaint of the Attorney-General alleged nothing which would justify the appointment of a receiver. In substance, the Attorney-General alleged that the Bunge Corporation knew of De Angelis ’ fraudulent scheme, did not expose it and used this inside knowledge to make a profit buying and selling on the Produce Exchange. There is no allegation that Bunge actually participated with De Angelis in the fraudulent scheme or that it defrauded any particular individual.
If appellants were allowed to intervene, they would have to introduce all the proof which would be needed to justify the appointment of a receiver for presumably the Attorney-General would do nothing further in the suit. Since this is so, there appears no compelling reason to allow appellants into the suit, for they may bring about the same result in an action of their own against Bunge.
*101 In being allowed to intervene, the appellants assert they would hope to use the evidence which the Attorney-General has collected. However, this material is confidential and it is very unlikely that the Attorney-General would, or should, be willing to turn it over to appellants. (Cf. General Business Law, § 352, subd. 5.)
Appellants are in no way foreclosed from commencing their own suit against Bunge, if they are so advised. However, we hold they may not, either through a motion to reopen and intervene in the Martin Act suit, or by means of an article 78 proceeding, pre-empt the Attorney-General’s discretion in prosecuting a suit under the Martin Act.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Fuld and Judges Burke, Sceleppi, Bergan and Breitel concur.
Order affirmed.

. “ § 353-a. Receivers. In any action brought by the attorney-general as provided in this article, the court at any stage of the proceedings may appoint a receiver of any and all property derived by the defendant or defendants or any of them by means of any such fraudulent practices, including also all property with which such property has been mingled if such property can not be identified in kind because of such commingling, together with any or all books of account and papers relating to the same. The judgment entered in such action may provide that such receiver shall take title to any or all such property and books of account and papers relating to the same and liquidate such property or any part thereof for the benefit of all persons intervening in the said action and establishing an interest in such property. The judgment may also provide that all such property, the title to or interest in which has not been established in such action by interveners or otherwise by due process to be in a person or persons other than defendant or defendants, shall be returned to the defendant or defendants as their interest may appear. Such receiver shall be subject to all the duties of receivers appointed in a civil action as far as practicable except that such provisions relating to commissions or compensation of receivers shall not be applicable to receivers appointed pursuant to this section, but such commissions or compensation shall be fixed by the court in any amount which it may determine to be just and equitable. In any action brought by the attorney-general as provided in this article the court may grant such other and further relief as may be proper.”