**MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, Plaintiff,**

v.

**Elsie CAVICCHIA, the State of New York, Arthur Weiss, as temporary receiver for the State of New York, Anna L. Parillo and Louis J. Parillo, Defendants.**

**REYNOLDS & CO., Plaintiff,**

v.

**Elsie CAVICCHIA, the State of New York, Arthur Weiss, as temporary receiver for the State of New York, Anna L. Parillo and Louis J. Parillo, Defendants.**

**Nos. 69 Civ. 947 and 1560.**

United States District Court,
S. D. New York.

March 12, 1970.

Brown, Wood, Fuller, Caldwell & Ivey, New York City, for plaintiff Merrill Lynch, Pierce, Fenner & Smith, Inc.;

Robert A. Foy, New York City, of counsel.

Townsend & Lewis, New York City, for plaintiff Reynolds & Co.; Eliot H. Lumbard, Daniel E. Kirsch, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., State of New York, Albany, N. Y., for defendant, The State of New York; Philip Weinberg, New York City, of counsel.

Arthur Weiss, pro se.

## OPINION

LASKER, District Judge.

The Attorney General of the State of New York brought suit under Article 23–A of the New York General Business Law, McKinney's Consolidated Laws, c. 20 ("Martin Act"), General Business Law § 352 et seq., against one Elsie Cavicchia. A receiver (defendant Arthur Weiss) of Cavicchia's property was appointed and authorized to take possession of such of her property as was in the hands of her brokers, the plaintiffs here.

Simultaneous proceedings by a private party against Cavicchia in New Jersey resulted in similar orders of the New Jersey court addressed to Cavicchia's brokers. Confronted with the possibility of double liability relating to the same subject matter, plaintiffs brought these statutory interpleader actions pursuant to 28 U.S.C. § 1335. In each of the interpleader actions the respective plaintiff has moved, pursuant to 28 U.S.C. § 2361, for an order restraining the prosecution of the Martin Act suit and for other relief.

The State of New York and Weiss now move to dismiss the complaints in the interpleader actions, claiming that the court lacks personal jurisdiction of them because they are immune from suit under the Eleventh Amendment to the Constitution of the United States, which provides:

"The Judicial power of the United States shall not be construed to extend

to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The question for determination is whether, in a "Martin Act" proceeding, the State of New York is a real party in interest. If it is, the Eleventh Amendment acts as a bar to the interpleader suit; if it is not, the Amendment is inoperative.

These motions, which present precisely the same issue in each case, are treated in a single opinion.

The facts are not in dispute. Sometime in 1968 the Attorney General of the State of New York, on behalf of the state, commenced a civil action in New York Supreme Court, New York County, against Cavicchia. The action was brought pursuant to the Martin Act and sought to enjoin Cavicchia from engaging in the sale of securities within New York State. Upon a showing by the Attorney General that defendant Cavicchia had indulged in a course of fraudulent conduct in connection with the sale of securities in the state, Justice Helman of the Supreme Court granted an order enjoining her *pendente lite* from engaging in such sales and "from transferring or disposing of * * * the property of the defendants in their possession or in the possession of other persons, brokers, banks, or associations or institutions * * *, derived by the fraudulent practices set forth" in the complaint in that action.

On September 6, 1968, the Supreme Court appointed Arthur Weiss, Esq., a defendant herein, to be temporary receiver, pursuant to Section 353–a of the Martin Act, "of any and all property derived by * * * Elsie Cavicchia * * * by means of fraudulent practices," and directed that the "receiver shall take title to any and all such property * * * and preserve and conserve such property * * * for the benefit of all persons intervening in this action and establishing an interest in

such property." The order specifically authorized Weiss to take charge and possession of "[a]ny and all securities, dividends and monies held by * * * Merrill Lynch Pierce Fenner & Smith, Inc., Reynolds & Co., [and others] * * * in the accounts of the defendant Elsie Cavicchia." Cavicchia maintained her accounts with both companies at their Newark, New Jersey, offices.

On appeal from this order by defendant Cavicchia, the Appellate Division, First Department, on February 27, 1969 unanimously affirmed. By letters dated the following day, defendant State of New York joined in the demand of defendant Weiss that Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch") and Reynolds & Co. ("Reynolds"), the respective plaintiffs in the companion interpleader actions herein, turn over to the receiver all securities held by them in the accounts of defendant Cavicchia.

Meanwhile Anna L. and Louis J. Parillo, defendants herein, brought suit in the Superior Court of New Jersey, Chancery Division, Essex County, against Cavicchia and certain other defendants, and on July 17, 1968 obtained an order placing in the custody of that court the "securities and funds on deposit with the defendant Elsie Cavicchia's brokerage account with Merrill Lynch, Pierce, Fenner & Smith, Newark New Jersey, * * * and * * * Reynolds & Co., Newark, New Jersey."

On October 18, 1968, the New Jersey court granted a further order providing that the net value of the funds and securities in the Merrill Lynch account and in the Reynolds account be applied "to such payment to the plaintiffs as will satisfy any settlement or final judgment" in the action as between the Parillos and Cavicchia. The order further provided that the Parillos' interest in these accounts was "a first charge thereon, superior and prior to that of Arthur Weiss, Esq., * * * as temporary receiver" in the above mentioned New York action.

Plaintiffs Merrill Lynch and Reynolds thereupon commenced these companion

statutory interpleader actions seeking judgment restraining all the defendants from commencing or prosecuting any suit against plaintiffs to recover the securities here involved and requiring defendants to interplead and settle among themselves the right to this property.[1]

Subsequently, defendants State of New York and Weiss, as temporary receiver, made the present motions to dismiss the complaints of both plaintiffs on the ground that this court lacks jurisdiction over defendants by virtue of the provisions of the Eleventh Amendment. They argue that the instant interpleader actions are brought against the state and a receiver appointed by its courts, and as such are expressly barred by the Eleventh Amendment, which denies to federal courts authority to entertain a suit brought by private parties against a state without its consent. (Plaintiffs nowhere allege, nor does the record indicate, any consent on the part of the state to be sued.)

█ Were it not for the Eleventh Amendment issue raised by defendants, plaintiffs' interpleader actions would clearly lie. Indeed, defendants do not challenge the appropriateness of this procedure other than on the specific constitutional ground just mentioned.

28 U.S.C. § 1335 provides, in part:

"(a) The district courts shall have original jurisdiction of any civil action of interpleader * * * filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, * * *, if

"(1) Two or more adverse claimants, of diverse citizenship * * *, are claiming or may claim to be entitled to such money or property, * * * *"

All conditions required by the statute have been met in the cases at bar. All of the defendants except the state and Arthur Weiss, a New Yorker, are residents of New Jersey. Despite the absence here of complete diversity between parties plaintiff and parties defendant, as well as between the claimants themselves, the diversity requirements of the interpleader statute have been met. As Professor Wright has noted:

"Where each of the claimants is a citizen of a different state, and the stakeholder is disinterested, his citizenship is immaterial, since the actual controversy is between the claimants. The courts have gone far beyond this, however, and have entertained statutory interpleader on the basis of what is called 'minimal diversity': so long as there are at least two opposing claimants of diverse citizenship, they have held that jurisdiction exists, even though there may be other claimants, or a stakeholder who is not disinterested, of the same citizenship." Wright, Federal Courts § 74, p. 280 (1963).

That both Merrill Lynch and Reynolds are innocent and completely disinterested stakeholders is not contested. The New York courts have ordered plaintiffs Merrill Lynch and Reynolds to turn over to defendant Weiss all monies and securities which they hold in the accounts of defendant Cavicchia. Plaintiffs have also been directed by the New Jersey courts to hold the money and property of defendant Cavicchia in *custodia legis*. It is manifestly clear, therefore, that the courts of both states are claiming an interest in the property held by plaintiffs in the various Cavicchia accounts. It is equally clear that compliance with the orders of one state's courts could place plaintiffs in jeopardy of violating the

---

1. Pending determination herein of plaintiffs' motions for a restraining order enjoining prosecution of the Martin Act suit, this court, by separate orders, restrained and enjoined defendants "from prosecuting and taking any action in any

State or United States court" against plaintiffs regarding the property of defendant Cavicchia held by them, including the pending New York and New Jersey court actions.

orders of the other state's courts, for the New Jersey courts would be without power to compel the State of New York, or its temporary receiver, to comply with any orders entered in the New Jersey action, and there is a question as to whether the New York courts would be able to enforce orders entered in the New York action against those defendants who are residents and citizens of the State of New Jersey. Thus, if plaintiffs did violate the orders of either court by delivering the Cavicchia property in accordance with the order of the other, plaintiffs would be exposed to contempt proceedings.

These actions contain all the elements of classic interpleader, with the innocent plaintiff stakeholders caught between the Scylla and Charybdis of conflicting court orders. Plaintiffs are registered securities broker-dealers with branch offices in both New York and New Jersey, and are subject to the jurisdiction of the courts of both states. Plaintiffs claim for themselves no interest in the monies and property contained in the Cavicchia accounts; nor were they parties to any of the prior state court proceedings which have led to the present competing claims. Their wholly accidental involvement herein derives from their misfortune in holding property in the accounts of a particular customer who happened to be named as a defendant in two different actions pending in two different courts in two different states. Nevertheless, the resulting rival claims may conclude in separate judgments requiring plaintiffs to pay to the various claimants money and property in excess of that held by them on behalf of defendant Cavicchia. To do so, and thereby to avoid the possibility of a contempt citation, plaintiffs would be compelled to draw upon their own assets, even though it is not their assets being sought by the adverse claimants in the first instance. Furthermore, plaintiffs, though themselves innocent of any wrongdoing, would undoubtedly incur substantial litigation expenses in the separate actions pending in each jurisdiction.

Clearly, then, statutory interpleader affords the most feasible if not the only complete form of relief. For as the Supreme Court stated in Texas v. Florida, 306 U.S. 398, 412, 59 S.Ct. 563, 570, 83 L.Ed. 817 (1939):

> "In the case of * * * bills of interpleader and bills in the nature of interpleader, the gist of the relief sought is the avoidance of the burden of unnecessary litigation or the risk of loss by the establishment of multiple liability when only a single obligation is owing. These risks are avoided by adjudication in a single litigation binding on the parties."

There exists no forum other than federal district court to which plaintiffs may now turn to be relieved of possible contempt and financial liability "in a single litigation binding on [all] the parties." *Id.* Indeed, one of the motivating purposes behind the enactment of the modern federal interpleader statute was to provide a federal forum for cases where the state could not obtain jurisdiction over all the parties, and which, therefore, no state court could hear. As Professor Wright states:

> "Before enactment of the federal interpleader statute, there was no effective procedure whereby rival claimants of diverse citizenship and residence could be sued in any district in federal court, while territorial limitation on service of process barred state courts from giving relief. This situation is cured by the statute * * *"

Wright, supra, at 278.

Thus, plaintiffs have properly chosen to protect their interests by means of the instant interpleader actions.

The effectiveness of this choice, however, depends upon the outcome of the defendants' present Eleventh Amendment attack on these companion suits. Defendants New York State and Arthur Weiss contend that, notwithstanding the obvious propriety of plaintiffs' choice of forum and procedure, these actions must be dismissed as suits by private individuals against a sovereign state in viola-

tion of the Eleventh Amendment. As stated above, the Eleventh Amendment provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

■ It is a basic rule of constitutional law, therefore, that a state may not be sued without its consent by citizens of another state (but for exceptions, not relevant to the scope of this opinion, involving action of state officials without the authority of state law or in contravention of the statutes or Constitution of the United States, or involving the tortious acts of such state officials). Indeed, the Supreme Court has also recognized that "an unconsenting State is immune from federal-court suits brought by its own citizens as well as by citizens of another state," Parden v. Terminal R. Co., 377 U.S. 184, 186, 84 S.Ct. 1207, 1209, 12 L.Ed.2d 233 (1964), which is the situation in the cases at bar.

Thus, defendants are correct in urging that the interpleader of a sovereign state in the federal courts may be deemed to be a suit against that state and, if so deemed, is forbidden by the Eleventh Amendment. Such was the Supreme Court's specific ruling in Worcester County Trust Co. v. Riley, 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed. 268 (1937), in which the plaintiff bank, as executor, sought to interplead tax officials of Massachusetts and California in federal court to determine in which state the decedent had been last domiciled and which state thereby had the right to recover death taxes. The Court upheld the immunity of the California officials from suit, finding the action to be an infringement of the Eleventh Amendment. On the authority of *Worcester*, defendants contend that the instant interpleader actions are barred.

In opposing defendants' motions to dismiss, plaintiffs argue that the Eleventh Amendment is no bar here because the State of New York and receiver Weiss are only nominal parties and not the real parties in interest in this litigation, and that therefore this court does indeed have jurisdiction over them.[2]

■ Case law is clear that the prohibition of the Eleventh Amendment is applicable only if the state is the real party in interest in the litigation. See, e. g., Missouri, Kansas & Texas Ry. Co. v. Missouri R. R. & Warehouse Comm'rs, 183 U.S. 53, 22 S.Ct. 18, 46 L.Ed. 78 (1901); Porter v. Beha, 12 F.2d 513 (2d Cir. 1926); Murray v. Transit Commission, 11 F.Supp. 27 (S.D.N.Y.1935). Thus, before defendant State of New York can avoid the suits herein by pleading the bar of the Eleventh Amend-

2. Plaintiffs further contend that, in light of the conflicting orders of the courts of New York and New Jersey, they may be forced to relinquish property without assurance of protection against future inconsistent claims by state officials, and in such an event they would be deprived of property without due process of law in violation of the Fourteenth Amendment. Accordingly, plaintiffs argue, relying on Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and Western Union Telegraph Co. v. Pennsylvania, 368 U.S. 71, 75, 82 S.Ct. 199, 201, 71 L.Ed.2d 139 (1961), that, despite the presence of the State of New York and Arthur Weiss as named defendants, the instant actions of statutory interpleader are properly authorized under the Eleventh Amendment. Ex parte Young held that unconstitutional acts of state officers can be restrained. In *Western Union*, the Supreme Court observed that

" * * * when a state court's jurisdiction purports to be based, as here, on the presence of property within the State, the holder of such property is deprived of due process of law if he is compelled to relinquish it without assurance that he will not be held liable again in another jurisdiction or in a suit brought by a claimant who is not bound by the first judgment."

It is unnecessary to deal with this contention of plaintiffs since I find plaintiffs' first argument dispositive of the issues at hand.

ment, it must be shown to be more than a nominal party to the proceedings.

 Criteria have been developed to determine whether a state is a real party in interest. "The mere presence of a state as a titular party is not conclusive, for such question is to be determined by the essential nature and effect of the proceeding as it appears from the entire record." State of Colorado v. American Machine and Foundry Company, 143 F.Supp. 703, 709 (D.Colo.1956); Ex parte State of Nebraska, 209 U.S. 436, 28 S.Ct. 581, 52 L.Ed. 876 (1908). It is a further rule that if compliance with any decree entered by the court does not require the doing of any affirmative act which affects the state's political or property rights, the state is not the real party. Hopkins v. Clemson College, 221 U.S. 636, 31 S.Ct. 654, 55 L.Ed. 890 (1911); Porter v. Beha, supra; In re Fidelity Assur. Ass'n, 42 F. Supp. 973 (S.D.W.Va.1941), rev'd on other grounds Simms v. Fidelity Assur. Ass'n, 129 F.2d 442 (1942), aff'd 318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 1032 (1943). Although the pecuniary or beneficial interest of the state has generally been an important factor taken into consideration, it has also been held that the mere fact that the state has some pecuniary or beneficial interest in the matter is not conclusive. State v. American Machine and Foundry Company, supra. It is also settled that a suit to enjoin proceedings by a state agency, charged with the administration of a state statute, is not necessarily one against the state. Murray v. Transit Commission, supra. Accordingly, it follows that a state official, appointed to perform acts and duties which, though appropriate for governments, do not involve any sovereign rights of that government, is not immune from suits *virtute officii*. Porter v. Beha, supra.

The leading explication of the applicable principles to be used in determining whether a state is a real party in interest was given by the Supreme Court nearly seventy years ago in the *Missouri, K. & T.* case, supra. There, the

Missouri board of railroad commissioners had ordered the defendant railroad company, a Kansas citizen, to discontinue certain allegedly excessive charges. The company failed to comply with the order, and so the commissioners brought a statutory proceeding in the state court to restrain the railroad from continuing to violate the order. The company removed the case to federal court; a motion to remand on the ground that the state was the real party plaintiff, and the case therefore not within the removal statute, was denied. The Supreme Court affirmed, stating:

"[I]t may be fairly held that the State is such real party when the relief sought is that which enures to it alone, and in its favor the judgment or decree, if for the plaintiff, will effectively operate." 183 U.S. at 59, 22 S.Ct. at 20.

As to the case before it, the Court continued:

"It is not an action to recover any money for the State. Its results will not enure to the benefit of the State as a State in any degree. It is a suit to compel compliance with an order of the railroad commissioners in respect to rates and charges. The parties interested are the railway company, on the one hand, and they who use the bridge, on the other; the one interested to have the charges maintained as they have been, the others to have them reduced in compliance with the order of the commissioners. They are the real parties in interest, and in respect to whom the decree will effectively operate.

"It is true that the State has a governmental interest in the welfare of all its citizens, in compelling obedience to the legal orders of all its officials, and in securing compliance with all its laws. But such general governmental interest is not that which makes the State, as an organized political community, a party in interest in the litigation, for if that were so the State would be a party in interest in all liti-

gation; because the purpose of all litigation is to preserve and enforce rights and secure compliance with the law of the State, either statute or common. The interest must be one in the State as an artificial person." 183 U. S. at 59–60, 22 S.Ct. at 21.

Plaintiffs Merrill Lynch and Reynolds argue that this language commands a decision in their favor in the cases at bar. Defendants, on the other hand, contend that, inasmuch as the *Missouri, K. & T.* case dealt with the question of real parties in interest only in the context of the removal statutes, the Court's language construing the Eleventh Amendment is mere *dicta* and not controlling in the instant interpleader actions. I disagree with the defendants' argument, and concur with the interpretation of Circuit Judge Mack in Murray v. Transit Commission, supra, that the *Missouri, K. & T.* case

> "cannot be distinguished on the ground that the question [as to the real party in interest] arose under the Removal Acts, whereas here the Eleventh Amendment is involved. * * * The decision in the Missouri, Kansas & Texas Ry. Case has frequently been cited with approval; it has been held applicable even though the state was a nominal party to the action sought to be enjoined." 11 F.Supp. at 29.

Whatever may be the ultimate question before the court (be it removal or the bar of the Eleventh Amendment), the preliminary determination as to whether or not a state is the real party in interest should be founded on consistent principles of construction.

■ Applying these principles, I find that the State of New York is not a real party in interest in this litigation and that, accordingly, the Eleventh Amendment is no bar to these suits. As discussed earlier, the Attorney General's proceeding against Cavicchia in New York Supreme Court was brought pursuant to Article 23–A of the New York State General Business Law, otherwise known as the Martin Act. The very language of this statute negates any notion that the state as such has a real interest in the controversy. Section 353 of the Martin Act authorizes the Attorney General, when he believes that anyone has engaged in, or is about to engage in, any fraudulent practices involving securities, to "bring an action *in the name and on behalf of the people* of the state of New York." (Emphasis added.) In any such action brought by the Attorney General, the court may, pursuant to Section 353–a of the Act, appoint a receiver "of any and all property derived by the defendant * * * by means of any such fraudulent practices." In the event of such an appointment, the court may (and, here, the court did) order the receiver to "take title to any or all such property * * * *for the benefit of all persons intervening in the said action and establishing an interest in such property*." (Emphasis added.)

The Attorney General argues that the reality of the interest of the state is expressly demonstrated by the power to bring an action in the name of the state, and by other powers conferred by the Martin Act, such as the power to investigate, enjoin and criminally prosecute fraudulent securities activity within the state. I do not agree that this composite of powers causes the state to be a real party in interest in a case such as the one at hand. It should be observed that in *Missouri, K. & T.*, supra, the Supreme Court was confronted with a case involving statutes which endowed the state with a similar array of powers. They provided for the creation of a board of railroad commissioners and, not unlike the Martin Act, granted that board power to enforce the provisions of the statute, investigate complaints, assess penalties, and enforce its orders in the courts of the state. Further, the statute provided that a civil action to enforce the board's orders could be brought either by the board itself or by "any person or company interested in such order." Nevertheless, the Supreme Court declared Missouri not to be a real party in interest.

The form of action chosen and the nature of the relief sought by the Attorney General also tend to derogate from the state's argument that it is a real party in interest in this case. The state suit here in question is a civil, and not criminal, action. That the Attorney General may, under other provisions of the statute (see, e. g., General Business Law § 358), prosecute defendants criminally for their fraudulent conduct is not here relevant.[3] The Attorney General seeks two forms of relief, both civil in nature: first, to enjoin Cavicchia and her co-defendants from engaging in the sale of securities within New York State; and, second, through the vehicle of a receiver, to return the fraudulently derived property to those persons from whom it was fraudulently obtained.

As to the latter request for relief, perhaps analogizing the situation to a criminal case, the Attorney General argues that the Eleventh Amendment is particularly applicable "where, as here, the State, in the exercise of fundamental police power functions, has obtained a receiver, duly appointed by a State court, to protect the assets of one accused of securities frauds, for the benefit of persons defrauded." (Defendant's memorandum in support of motion to dismiss, p. 5). I find this argument unimpressive. Clearly, the Attorney General does not, and cannot, claim any interest in the property either for the state or the temporary receiver. As the Attorney General himself admitted in his memorandum, receiver Weiss was appointed to protect Cavicchia's assets "for the benefit of persons defrauded." Indeed, as noted earlier, the very statutory authority enabling the Attorney General to apply for a temporary receiver requires the receiver to hold the property, not for the state's benefit, but for the benefit of

its defrauded citizens who intervene in the action and establish an interest in the property. Similarly, the specific order of the New York Supreme Court appointing Weiss as temporary receiver directed him to "preserve and conserve such property * * * for the benefit of all persons intervening in this action and establishing an interest in such property." No benefit will enure to the state by the delivery of this property to its temporary receiver. As Justice Aurelio commented in People v. Barrington & Co., Sup., 137 N.Y.S.2d 54, 56 (1954) (not officially reported):

> "The intent of Article 23–A of the General Business Law is that property derived by means of fraudulent practices shall go back, as far as possible, to the person from whom it was obtained."

See also In re Koch, 116 F.2d 243, 246 (2d Cir. 1940), cert. denied Hirson v. Koch, 313 U.S. 565, 61 S.Ct. 941, 85 L. Ed. 1524 (1941). It is important also to note that, even if intervening claimants should fail to establish their ownership of *all* the sequestered property, the remaining assets in the hands of the receiver may still not revert to the state. Under Section 353–a the court may provide that

> " * * * *all such property*, the title to or interest in which has not been established in such action by intervenors or otherwise by due process to be in a person or persons other than defendant or defendants, *shall be returned to the defendant* or defendants as their interest may appear." (Emphasis added.)

Thus, the maximum extent of the interest of the state in the deposited property is that it be held safely in the custody of a court-appointed receiver until such

---

3. Admittedly, such a criminal action would pose an altogether different question, for, except in circumstancs not here relevant, it is well settled that "[i]n criminal proceedings * * * already pending in the state court under a concededly valid statute, the state, as an organized political community, is the real party in interest and the federal courts cannot, therefore, enjoin the state prosecuting officials from continuing the proceedings." Murray v. Transit Commission, supra, 11 F. Supp. at 28.

time as intervening residents establish their valid claims therein and the remainder thereof, if any, is returned to the defendant. Those residents who have been defrauded are the parties with real interests in the sequestered property, and it is these people whom the Attorney General represents.

The Attorney General further contends that, even if the State of New York itself has but a general governmental interest in the protection of its defrauded citizens, it still has a very direct interest in obtaining the second measure of its requested relief, namely, an injunction against Cavicchia to prevent her from engaging in any activities relating to the sale of securities within the state. Here, too, however, I find that the maintenance of the instant interpleader actions constitutes no challenge to the inherent sovereignty of the State of New York within the meaning of the Eleventh Amendment.

The Attorney General cites in support of his argument the recent opinion of the New York Court of Appeals in People v. Bunge Corporation, 25 N.Y.2d 91, 302 N.Y.S.2d 785, 250 N.E.2d 204 (1969). There, the court observed, 25 N.Y.2d at 100, 302 N.Y.S.2d at 790, 250 N.E.2d at 208:

" * * * [T]he primary purpose of a suit brought under the Martin Act is to enjoin the defendant's fraudulent activity; the sequestration of property is merely incidental to such an action. * * * The Attorney-General, in prosecuting a Martin Act suit, is representing the People of the State at large—not the interests of a few individuals. In representing the People, the Attorney-General must be given the personal discretion to decide upon the remedies which he wishes to employ. To allow intervention by private individuals to further their own private aims might seriously jeopardize the purpose of the Attorney-General's suit."

The facts of the Bunge case, however, are clearly distinguishable from the proceedings here under consideration. In Bunge, private intervenors attempted, following the Attorney General's institution and subsequent termination by consent judgment of a Martin Act suit, to re-open the action and have a receiver appointed pursuant to Section 353–a, or, in the alternative, to require the Attorney General himself to apply for a receiver of the allegedly fraudulently derived property. The Court of Appeals held that the intervenors could not, by either means, "pre-empt the Attorney-General's discretion in prosecuting a suit under the Martin Act." Id., 25 N.Y. 2d at 101, 302 N.Y.S.2d at 791, 250 N.E. 2d at 208:

In contrast to the movants in Bunge, the plaintiffs in the instant interpleader actions in no way seek to undermine or interfere with the prosecutorial discretion in the hands of the Attorney General. Under all circumstances he clearly retains the necessary discretion to sue or not to sue, to terminate or not to terminate the action, to appoint or not to appoint a receiver, and to apply for whatever injunctions he deems necessary. Indeed, as regards the appointment of a receiver, plaintiffs' use of the interpleader statute has obtained for the Attorney General the very object he sought in the New York courts, namely, the deposit of the sequestered funds with an impartial body for the benefit of the state's defrauded residents. Admittedly, the property must be deposited with this court rather than with a state court receiver; but with this requirement the Attorney General, like all private parties, must comply unless he can demonstrate that the state is the real party in interest.

The state's general governmental interest in the prevention of fraudulent securities activity notwithstanding, such a demonstration cannot be made in the case at hand. This litigation does not in any way affect state revenues, state property, state contracts, or any activity by the state as a political entity. Unlike the situation with which the Supreme Court was faced in Worcester County

Trust Co. v. Riley, supra, no power of a state to act or to tax is challenged in the instant interpleader actions; no direct or indirect bar to valid state taxes is herein sought. Similarly, the present suits do not conflict with the motive for the adoption of the Eleventh Amendment, which was "to quiet grave apprehensions that were extensively entertained with respect to the prosecution of state debts in the federal courts" by private individuals. Missouri v. Fiske, 290 U.S. 18, 27, 54 S.Ct. 18, 21, 78 L.Ed. 145 (1933). Neither plaintiff Merrill Lynch nor plaintiff Reynolds, nor any other party to the interpleader proceedings at bar, asserts a claim of indebtedness or any monetary claim against the State of New York. No decree which may ultimately be entered by this court will require the state's doing of an affirmative act which would affect its political or property rights. The result of this litigation will neither inure to the benefit of, nor impose any liability upon, the state. The persons interested in the present proceedings are Cavicchia, the two Parillos, and those allegedly defrauded New York residents who possess verifiable claims in the sequestered property. It is with respect to these parties that any decree eventually entered by this court will effectively operate. And, even though it is true that the state, through the Attorney General, is charged with representing and protecting the public at large (as it is similarly charged with regard to its defrauded citizens), such an obligation does not render the state a real party in interest in this litigation.

The Court of Appeals for this Circuit dealt with an analogous situation in Porter v. Beha, supra. There, the New York state superintendent of insurance, in an effort to secure reinsurance for a failing insurance company, ordered the person "controlling" the company to raise $40,000 to avoid the immediate liquidation of the company. To meet the demand of the superintendent, the controlling person turned over the proceeds of bonds he had earlier stolen from a small bank in which he was also influential. Subsequently the bank's receiver sued the superintendent to impress a lien on the funds in his hands to the extent of the proceeds of the bonds. The superintendent answered that he could not be sued to impress a lien on property officially in his hands because to sue him would be to sue the state. Although noting that the superintendent's "duty and authority extend to the examination of New York insurance companies and the liquidation of the business of any company becoming (inter alia) insolvent," 12 F.2d at 513, the court nevertheless rejected the superintendent's claim of immunity, holding that his primary objective had been "to safeguard the interests of the policy holders" in the company. Id. at 516. The court expressly refused to find the state a real party in interest on the basis of the superintendent's general statutory obligations, concluding, at 517:

"It is plain that defendant superintendent does not assert and never has suggested that this money is owned by the state of New York, or that the state has any interest in the matter, except as it desires to fulfill a duty by winding up insolvent insurance companies."

The rule of Porter v. Beha is applicable here. I find, therefore, that the Attorney General's statutory mandate under the Martin Act to protect the people of New York from fraudulent securities activity is insufficient to invest the state with a real interest in the present proceedings.

Putting aside the Eleventh Amendment question, it is fair to say that equitable results will flow from the maintenance of the instant interpleader suits. Merrill Lynch and Reynolds do not seek to interfere with the Attorney General's New York action against Cavicchia or with the Parillos' New Jersey suit. Protection from competing state orders is all that is sought by these plaintiffs, who find themselves otherwise powerless to affect events that may expose them to double liability. The State of New York

is not prevented from pursuing its Martin Act suit nor from securing the injunctive relief in this court that it sought in the state court action, for this court is empowered by the federal interpleader statute to determine all claims of all parties in the case. 28 U.S.C. § 2361. Certainly the Attorney General cannot claim that depositing the Cavicchia property with this court entails any greater risk than placing it in the hands of a state court receiver.

Nor are the defrauded New York residents for whose benefit the Attorney General commenced his action harmed by having the action tried in federal court. Whatever proof they are put to will be the same as it would have been in the state court. Of course, they must now substantiate their claims on the merits at a trial with all claimants—including additional New Jersey residents —participating. However, this interpleader procedure, by permitting the simultaneous airing of the conflicting claims of all residents (be they from New York or New Jersey), will protect those New Jersey residents whose interests might have been compromised by the delivery of the Cavicchia property to a New York receiver. This is a salutary result.[4]

Two further defenses to the present suits are made by the Attorney General on behalf of temporary receiver Weiss. It is contended that, inasmuch as the receiver was appointed by the New York Supreme Court pursuant to Section 353–a of the General Business Law statutes, he is an official of the State of New York and as such is entitled to the same immunity from suit which the state itself enjoys under the Eleventh Amendment. Although we entertain some doubt as to the validity of this proposition (see, e. g., In re Fidelity Assur. Ass'n, supra, 42 F.Supp. at 988), we do not find it necessary to pass upon this question in light of our holding that the state is not herein entitled to the protection of the Eleventh Amendment. Surely if the constitutional prohibition does not apply to these suits against the state itself, it cannot apply with respect to the same suits against the state's court-appointed receiver.

The motion to dismiss as to receiver Weiss proceeds also on the ground that plaintiffs in the instant interpleader proceedings did not obtain leave to sue him from the state court which appointed him. Undoubtedly, the general rule is that a court will not entertain jurisdiction of a suit against a receiver appointed by another court until the appointing court has given its consent that he be sued. See, e. g., Bonwit Teller, Inc. v. Vanderbilt, 9 Misc.2d 176, 164 N.Y.S.2d 185 (1957). However, as this court stated many years ago in Hupfeld v. Automaton Co., 66 F. 788, 789 (S.D. N.Y.1895):

"This rule rests on principles of comity, and is considered essential for the protection of the receiver as an officer of the court appointing him against unnecessary and expensive litigation touching controversies wherein it may often be within the power of the appointing court to give ample relief to any person aggrieved. But this rule has its qualifications, and the case at bar does not fall within it."

The *Hupfeld* case involved a suit by the owner of a patent to restrain the infringement of that patent by a state court-appointed receiver. The court held that, when the jurisdiction of the federal court in which the receiver is sued is conferred by federal laws and when such jurisdiction is exclusively within the federal courts (as is true of patent suits), the federal courts will, without first obtaining leave of the state court, entertain jurisdiction of suits to enjoin individuals from acts of infringement, even though they be officers of a state court. To refuse to do so, the

---

4. Considering defendant Cavicchia's residential and business ties with New Jersey, it is not inconceivable that the securities she kept in the accounts of plaintiffs' New Jersey offices were the result of fraud, if any, perpetrated in whole or in part upon New Jersey and not New York residents.

court said, "would leave it within the power of the state courts to exclude the holder of rights granted to him by the United States from the only tribunals which have jurisdiction to vindicate those rights." *Id.* at 789.

■ Although the present proceedings do not relate to subjects exclusively within the jurisdiction of the federal courts, nevertheless the reasoning of *Hupfeld* is illuminating. That the general rule of comity stated above should here be suspended is attested to by the fact that the appointing court clearly lacks the power "to give ample relief" to the parties aggrieved. Indeed, that very inability was the motivating factor in the passage of the Federal Interpleader Act, and a refusal by this court to assert jurisdiction over the receiver "would leave it within the power of the state courts to exclude" the plaintiffs from the "only tribunals which have jurisdiction to vindicate" their rights. In addition, such a refusal would allow state courts, whenever an interpleader action is preceded by the appointment of a state court receiver, to frustrate the congressional intent of the federal interpleader statute. Surely if Congress granted federal courts the power to enjoin entire state court proceedings under the statute, it could not have intended the courts' injunctive powers to be barred in suits against state court-appointed receivers.

In any event, temporary receiver Weiss, like the state itself, is only a nominal and not a real party in interest in this litigation, and this alone disposes of objection to suit on the part of the receiver. The Supreme Court's ruling in Treinies v. Sunshine Min. Co., 308 U. S. 66, 60 S.Ct. 44, 84 L.Ed. 85 (1939), is instructive here. In *Treinies,* the Sunshine Mining Company, faced with inconsistent judgments of the Idaho and Washington state courts as to the ownership of certain shares of Sunshine stock, filed a bill of interpleader in Idaho federal court. Included as defendants were a judge of the Superior Court of Washington and a court receiver of the disputed property, which joinder was said to violate the prohibition of the Eleventh Amendment. As the Court reasoned, however,

> "[A] short answer against [this] contention is the fact that neither the receiver nor the judge is enjoined by the final decree. * * * The State of Washington has no interest and no infringement of the Eleventh Amendment occurs." *Id.* at 74, 60 S.Ct. at 48.

Similarly, in the interpleader proceedings presently before us, neither the State of New York nor its court-appointed receiver has any real interest in the litigation; nor will they be affected by the final decree ultimately entered by this court.

Accordingly, defendants' motions to dismiss the complaints are denied, and plaintiffs' motions are granted.

Settle order on five days' notice.

Upon the submission of proposed orders the court requests the parties to state their respective views as to the proper scope of any injunctive relief, and in particular the extent to which the existing state actions may be permitted to continue without prejudicing the rights of the plaintiffs in these interpleader proceedings.