**Martin PAWGAN et al., Plaintiffs,**
v.
**Larry A. SILVERSTEIN et al.,
Defendants.**

No. 66 Civ. 3351.

United States District Court
S. D. New York.

March 30, 1967.

Harvey M. Sklaver and Schwartz & Frank, New York City, for plaintiffs; George H. Schwartz, Harvey M. Sklaver and Paul E. Gelbard, New York City, of counsel.

Benedict Ginsberg, New York City, for defendants.

METZNER, District Judge.

The plaintiffs are five individuals, each of whom purchased general partnership interests in Motel City B Associates, a New York general partnership. The defendants are three individuals who also had general partnership interests in Associates and were designated as the managing partners.

The plaintiffs seek rescission of their purchase based on alleged violations of sections 17(a) and 12(2) of the Securities Act of 1933, as amended (15 U.S.C. §§ 77q(a) and 77l(2)); section 10(b) of the Securities Exchange Act of 1934, as amended (15 U.S.C. § 78j(b)), and rule 10b-5 of the Securities and Exchange Commission promulgated thereunder (17 C.F.R. § 240.10b-5); and section 352-c of the General Business Law, McKinney's Consol.Laws, c. 20 of the State of New York.

Defendants have moved for an order staying the plaintiffs from the further prosecution of this action and directing them to arbitrate any claim or controversy that may exist between the parties pursuant to the terms of the partnership agreement.

The questions to be decided are whether these general partnership interests

were in fact a "security" within the definition of section 2(1) of the 1933 act, and if so, are they covered by the provisions of the 1933 and 1934 acts.

The partnership consisted of 20 persons, three of whom were the managing partners. Its purpose was to purchase and lease back to the seller a motel, located in New York City, on a net lease basis. The partnership really was a syndication, a popular method initiated in the 1950s for raising money for real estate ventures. Here the defendants had first entered into a contract to acquire the motel, and by the partnership agreement assigned the contract to the partnership for a 10% interest in the partnership, and the designation as managing partners. Further, the property could not be sold without the approval of the managing partners. The capital of the partnership was $720,000, and the value of the contract assigned by the defendants was fixed at $72,000. The balance of $648,000 was obtained by cash contributions from 17 other persons who were induced by defendants to purchase general partnership interests. $630,000 was needed to cover the purchase price of the motel which included $10,000 put up as a binder by defendants on the contract. The remaining $18,000 was to cover defendants' expenses in the acquisition of the property and the formation of the partnership. Thus the defendants received a 10% interest for putting the deal together without having a penny of cost to themselves.

The particular syndication we are dealing with here has been discussed at length in United States v. Silverstein, 237 F.Supp. 446 (S.D.N.Y.), aff'd, 344 F.2d 1016 (2d Cir. 1965). It is obvious that this venture was not a general partnership in the accepted sense, and calling it one does not properly reflect its real business form.

■ From the facts as outlined above, and Judge Bryan's opinion in 237 F.Supp. I find that this partnership interest may be classified either as certificate of interest or participation in a profit sharing agreement or investment contract,

and therefore a security. § 2(1) of the 1933 act. SEC v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946).

We come then to section 3(a) (11) of the 1933 act, which provides as follows:

"Sec. 3(a) Except as hereinafter expressly provided, the provisions of this title shall not apply to any of the following classes of securities: * * *

"(11) Any security which is a part of an issue offered and sold only to persons resident within a single State or Territory, where the issuer of such security is a person resident and doing business within or, if a corporation, incorporated by and doing business within, such State or Territory."

The moving papers indicate without contradiction that no one was invited to become a partner other than the 20 persons who became general partners, all of whom were residents of the State of New York. The formation of the partnership was not discussed with anyone other than these 20 persons. On the face of the record, such a security as we have here was exempt from the provisions of the 1933 act.

■ However, there are two specific exceptions to "exempted securities" as defined in section 3(a) (11). Sections 12(2) and 17(a) of the 1933 act make a person who offers or sells a security liable, under specified circumstances which are alleged in this pleading, in an action for rescission, whether or not the securities are exempt under section 3.

■ Defendants further argue that since the registration requirements of section 5 of the 1933 act are inapplicable because of an exemption of transactions not involving a public offering in section 4(2), the liability provisions of the act do not apply. I will assume for the purposes of this motion that we are dealing with a nonpublic offering. In the main, the act is concerned with having a registration statement in effect for securities so that there may be full and fair disclosure to the investing public of the financial condition of companies. How-

ever, the fact that registration may not be required does not clothe the security or transactions involving such securities with immunity from liability for violation of the fraud provisions of the act. 1 Loss, Securities Regulation 710 (2d ed. 1961).

The first and second counts of the complaint allege claims under sections 12(2) and 17(a) sufficient to confer jurisdiction in this court.

The third count seeks relief pursuant to section 10(b) of the 1934 act and rule 10b–5. The section makes it unlawful to

"use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device" etc.

There is no exemption either in the 1934 act or the rules of the Commission applicable to these securities.

Since the securities are subject to the provisions of sections 12(2) and 17(a) of the 1933 act, the nonwaiver provision of section 14 of that act comes into play, and the arbitration clause in the partnership agreement is void. Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). The same holds true for the alleged violation of section 10(b) of the 1934 act by virtue of the nonwaiver provision in section 29(a) of that act.

We come now to the fourth count, which alleges a violation of section 352–c of the New York General Business Law. It is predicated on the same operative facts as the first three counts. It is before the court on the theory of pendent jurisdiction. Lupardo v. I. N. M. Indus. Corp., 36 F.R.D. 438 (S.D.N.Y.1965).

Plaintiff argues that since this section is patterned on the federal security laws the court should read into it the nonwaiver provisions of the 1933 and 1934 acts. Obviously this cannot be done. The nonwaiver provisions are statutory, absent which this motion would have to be granted.

Plaintiff then contends that the question of arbitrability of this count must be determined by the Federal Arbitration Act, relying on Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959). This reliance is misplaced. Laying aside the fact of lack of diversity between the parties, the contract does not involve interstate commerce, a necessary base upon which the Federal Arbitration Act is predicated. This may appear to be confusing at first blush since the contract is subject to the federal securities laws because of the use of a "means" of interstate commerce (the device used by Congress to obtain federal regulation in as wide an area as possible), Fratt v. Robinson, 203 F.2d 627, 37 A.L.R.2d 636 (9th Cir. 1953). However, the distinction is clear.

This case is governed by Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956), where the court declined to apply the Federal Arbitration Act even though diversity was present. The Court looked to the local law, which here is that of New York.

Under New York law the matters in controversy are arbitrable as decided by Justice Hecht of the New York State Supreme Court when the parties presented that question to him for adjudication.

Settle order.