Arthur Yale KAVIT, Plaintiff-Appellee,

v.

A. L. STAMM & CO., a Co-partnership, and Jack R. Levien, Defendants-Appellants.

No. 149, Docket 72–1994.

United States Court of Appeals, Second Circuit.

Argued Dec. 17, 1973.

Decided Jan. 22, 1974.

Norman Winer, New York City (Nathan, Mannheimer, Asche, Winer & Friedman, New York City, of counsel), for defendants-appellants.

David L. Tecklin, New York City, for plaintiff-appellee.

Before LUMBARD, FRIENDLY and OAKES, Circuit Judges.

FRIENDLY, Circuit Judge:

■ The opinion of this court in Ryan v. J. Walter Thompson Co., 453 F. 2d 444, 445 (2 Cir. 1971), began by saying:

> This case is another example of a trend we have observed with disturbing frequency, namely, invocation of the salutary anti-fraud provisions of the federal securities laws in cases where those provisions are wholly inappropriate and wide of the Congressional mark. Moreover, the vice of this practice is compounded here by engrafting upon the misplaced federal securities law claim a state law claim that, but for the federal gloss, should have been litigated in the state courts.

The problem presented by this action by a customer against a stockbroker and a registered representative [1] fits this description and goes well beyond it. In *Ryan*, both the federal and state claims were disposed of on summary judgment. Here the federal claims were even weaker and in our view should have been dismissed on motion, while the pendent state claims were far more substantial —resulting, in fact, in recovery for the plaintiff. Moreover, the state claims would have gone to arbitration under the standard customer agreement if they had stood alone.[2] Permitting a plaintiff

---

[1]. Due largely to unconscionable delays by the attorneys for both parties, particularly the plaintiff, this case has been knocking around the District Court for the Southern District of New York and this court since 1966. An example of these delays is furnished by the history of the instant appeal. After obtaining four successive extensions of time, appellants filed their brief on March 1, 1973; appellee's brief was ordered to be filed on April 12. Appellee then obtained four extensions of time, but still fell into default on November 9. Finally, appellee was allowed to file his 26-page typewritten brief on December 7, only 10 days before the date set for argument.

[2]. The arbitration clause reads:

Any controversy between you and the undersigned arising out of or relating to this contract or the breach thereof, shall be settled by arbitration, in accordance with the rules, then obtaining, of either the Arbitration Committee of the Chamber of Commerce of the State of New York, or the American Arbitration Association, or the Board of Arbitration of the New York Stock Exchange, as the undersigned may elect. If the undersigned does not make such election by registered mail addressed to you at your main office within five (5) days after receipt of notification from you requesting such election, then the undersigned authorizes you to make such election in behalf of the undersigned. Any arbitration hereunder shall be before at least three arbitrators and the award of the arbitrators, or of a majority of them, shall be final, and judgment upon the

to try such claims on the basis of pendent jurisdiction not only adds to the burdens of the federal courts and deprives the parties of the opportunity to obtain in a more fitting tribunal "a surer-footed reading of applicable law," United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966),[3] but it strips the defendant of its contractual right to arbitration.

■ This court has not been grudging in its application of the pendent jurisdiction principles set out in United Mine Workers v. Gibbs, *supra.* See, *e. g.,* Astor-Honor, Inc. v. Grosset & Dunlap, Inc., 441 F.2d 627 (2 Cir. 1971); Leather's Best, Inc. v. S. S. Mormaclynx, 451 F.2d 800, 809–811 (2 Cir. 1971); Almenares v. Wyman, 453 F.2d 1075, 1083–1085 (2 Cir. 1971), cert. denied, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972). In none of those decisions, however, did a federal trial involve any risk of loss of rights beyond the possibility, in *Astor-Honor* and *Leather's Best,* that the federal court would misread state law. A quite different case is presented where, as here, dismissal or

a stay of the state claims would enable the defendant to have those claims determined by arbitrators rather than by a court. It is true that *Gibbs* suggests that the determination whether to invoke pendent jurisdiction or not should generally rest in the sound discretion of the district court, see 383 U.S. at 727–728, 86 S.Ct. 1130, 16 L.Ed.2d 218, but the Court used mandatory language in directing that when the federal claims are dismissed before trial, "even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." 383 U.S. at 726, 86 S. Ct. at 1139.

■■ Quite apart from the arbitration problem, the flimsy nature of federal claims may call for dismissal of pendent state claims. See McFaddin Express, Inc. v. Adley Corp., 346 F.2d 424 (2 Cir. 1965), cert. denied, 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539 (1966). In the cautionary part of his opinion in *Gibbs*, 383 U.S. at 726–727, 86 S.Ct. at 1139, which perhaps is not read enough, Mr. Justice Brennan noted that dismissal of common law claims

---

award rendered may be entered in any court, state or federal, having jurisdiction. Appellee contends that, despite the breadth of the arbitration clause, it does not apply even to claims arising under state law because the agreement also provided that all transactions would be subject to § 29 of the Securities Exchange Act, which voids arbitration agreements between brokers and customers as a means of resolving future questions of compliance "with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby," see Greater Continental Corp. v. Schechter, 422 F.2d 1100, 1103 (2 Cir. 1970); Reader v. Hirsch & Co., 197 F. Supp. 111, 116–117 (S.D.N.Y.1961); cf. Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (similar provision of § 12(2) of Securities Act of 1933). The contention is unfounded either in reason or in authority. See Stockwell v. Reynolds & Co., 252 F.Supp. 215 (S.D.N.Y.1965); cf. Robinson v. Bache & Co., 227 F.Supp. 456 (S.D.N.Y.1964); Pawgan v. Silverstein, 265 F.Supp. 898, 901 (S.D.N.Y.1967); Cohen v. Tenney Corp., 318 F.Supp. 280, 283 (S.D.N. Y.1970). Reader v. Hirsch & Co., *supra,* and Moran v. Paine, Webber, Jackson &

Curtis, 389 F.2d 242 (3 Cir. 1968), cited by appellee, are not in point. *Reader* involved a claim brought solely under the federal securities laws. In *Moran* the customer voluntarily submitted both her common law claims and her federal securities law claims to arbitration, and the court held that the award precluded subsequent recourse to the courts to enforce federal securities remedies.

3. Plaintiff asserts that he had the right to bring his case in federal court regardless of the applicability of pendent jurisdiction principles, since diversity jurisdiction existed under 28 U.S.C. § 1332, he being a citizen of Virginia and the defendants being citizens of New York. Without going into detail, we are convinced that, despite the allegations of the complaint, it appears "to a legal certainty" that plaintiff's claim was "really less" than the required jurisdictional amount. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–289, 58 S.Ct. 586, 82 L. Ed. 845 (1938). Of course, even if plaintiff had sufficiently alleged diversity jurisdiction, defendants would have been entitled to a stay of state claims pending arbitration, 9 U.S.C. § 3. See Whitney v. New York Stock Exchange, [1967–1969 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 92,106 (S.D.N.Y.1967).

might be merited if "[p]retrial procedures or even the trial itself . . . reveal a substantial hegemony of state law claims." The Justice added that "recognition of a federal court's wide latitude to decide ancillary questions of state law does not imply that it must tolerate a litigant's effort to impose upon it what is in effect only a state law case. Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed." 383 U.S. 727, 86 S.Ct. 1139. If it appears that the federal claims are subject to dismissal under F.R.Civ.P. 12(b)(6) or could be disposed of on a motion for summary judgment under F. R.Civ.P. 56, the court should refrain from exercising pendent jurisdiction absent exceptional circumstances.[4] Indeed, this is essential to avoid a result where, as has been happily said, "the dog would be wagged by his tail." Hart & Wechsler, The Federal Courts and the Federal System 925 (2d ed. 1973).[5]

■ An even greater degree of circumspection is demanded when, as here, exercise of pendent jurisdiction over a state claim will result in the claim being tried to a court rather than to arbitrators. In such cases the federal court normally should stay the trial of the state claims or dismiss them in the absence of any other ground of federal jurisdiction, if properly requested to do so, even when the federal claims cannot be disposed of without a trial. While exceptional circumstances might justify a contrary course, at the moment we cannot think of any.

It is with this background that we turn to the instant case, a rather minor fall-out of the Canadian mineral strike by Texas Gulf Sulphur Company [TGS] in April, 1964, which has consumed so much time of the district court—ironically, of Judge Bonsal in particular—and of this court. Plaintiff, Dr. Kavit, a veterinarian and speculator, had maintained accounts with four brokerage houses in Richmond, Va., including the Richmond office of Francis I. duPont & Co. Defendant Levien, who had become his registered representative there, left duPont in February 1964 and became a registered representative with defendant Stamm & Co. in New York City. To Stamm's misfortune, Dr. Kavit opened an account with it and later had his duPont accounts transferred there. The news of the TGS mineral strike and the sharp rise in the stock came not long after the Stamm account was opened. On April 10, 1964, TGS closed at 30⅛; by April 17, it had climbed to a close of 40¼. Convinced at that point that the stock was ready to fall, Dr. Kavit made two short sales of 100 shares of TGS, one on April 20 at 42⅝ and the other on April 21 at 39¾. Unhappily for Dr. Kavit the stock rebounded and the short

4. Such circumstances might be found when the defendant fails to call the court's attention to the weakness of the federal claim before the court has invested a substantial amount of time in the case, see, e. g., A. H. Emery Co. v. Marcan Products Corp., 389 F.2d 11, 19–21 (2 Cir.), cert. denied, 393 U. S. 835, 89 S.Ct. 109, 21 L.Ed.2d 106 (1968); when the pendent claim significantly invokes questions of federal policy, as in Gibbs itself, see also Almenares v. Wyman, supra, 453 F.2d at 1085; or when dismissal of the pendent claims would otherwise sharply clash with the directive in Gibbs that pendent jurisdiction serve the ends of "judicial economy, convenience and fairness to litigants." 383 U.S. at 726, 86 S.Ct. at 1139.

5. While suggesting that there are limits beyond which the practice should not be per-

mitted to extend, the courts of appeals have given broad rein to district courts that have exercised pendent jurisdiction even when the federal claims have been disposed of before trial. See Gem Corrugated Box Corp. v. National Kraft Container Corp., 427 F.2d 499, 501 n.1 (2 Cir. 1970); Ryan v. J. Walter Thompson Corp., supra; Gray v. Heat & Frost Insulators Local 51, 447 F.2d 1118, 1120 (6 Cir. 1971); Springfield Television, Inc. v. City of Springfield, 462 F.2d 21 (8 Cir. 1972). For examples of the very rare instances in which courts of appeals have reversed district courts on the ground that the federal claim was insufficient to support the exercise of pendent jurisdiction, see Elberti v. Kunsman, 376 F.2d 576 (3 Cir. 1967); and Brough v. United Steelworkers, 437 F.2d 748 (1 Cir. 1971).

sales were ultimately covered at 58¾, with a resulting loss of $3,602.26.

The complaint contained two counts under the Securities Exchange Act and two at common law. The first count, relying on § 10(b) and the ever-present Rule 10b–5, alleged that Levien had made a number of reckless predictions of the downward path that TGS shares would take, and that the April 21 short sale had been made without Dr. Kavit's consent. The fourth count alleged a violation of §§ 7 and 29 of the Securities Exchange Act. The theory underlying that claim was that between April 16 and May 6, 1964, Stamm knew that plaintiff's account was substantially undermargined, but that the company continued "encouraging and permitting purchases through the account." Plaintiff therefore claimed that the transactions in his account during that period were in violation of the margin requirements provision, 15 U.S.C. § 78g,[6] and that the contracts of purchase and sale in plaintiff's account thus violated 15 U.S.C. § 78cc. The second and third counts, one alleging negligence and the other charging conversion, were based on a melange of Levien's predictions, the allegedly unauthorized short sale of April 21, and Levien's failure to carry out instructions that if the market went up, he would cover the two short sales in the range of 43–44.

Defendants moved to dismiss the complaint for failure to state a claim under the Securities Exchange Act and, with respect to diversity, see note 3, *supra,* for lack of the required jurisdictional amount. In the alternative, they sought an order "staying all proceedings under U.S.C. Title 9 and Rule 81(a)(3) pursuant to the arbitration clause contained in the contract of the parties dated April 10, 1964." The motion was supported by extensive affidavits, to which plaintiff responded, and memoranda of

law were received from both sides. Judge Metzner denied the motion in an opinion dated April 3, 1967. Although he thought the allegations were "thin insofar as a fraud action is concerned," he believed them sufficient under what had just been stated in A. T. Brod & Co. v. Perlow, 375 F.2d 393, 398 (2 Cir. 1967). He said nothing about the claim under §§ 7 and 29, or about the motion for a stay. On rehearing, he noted merely that "the plaintiff has stated a claim under the Securities Exchange Act of 1934," and that the arbitration clause was "inoperative to bind the plaintiff to arbitration of this [Rule 10b–5] claim." Consequently, he denied the motion "to stay all proceedings in this action pending arbitration." In support of his ruling, the judge referred to his opinion in Pawgan v. Silverstein, 265 F.Supp. 898 (S.D.N.Y.1967), see note 2 *supra,* which held an arbitration clause void with respect to an alleged § 10(b) violation. *Pawgan* also held, however, that the nonwaiver provisions of the federal securities law, 15 U.S.C. §§ 77n, 78cc(a), do not apply to pendent state claims, and that those claims are thus subject to valid arbitration agreements. The reference to *Pawgan* suggests that Judge Metzner might well have looked favorably upon a motion to stay or dismiss which was limited to the common law claims, but defendants took no such step.

Alternatively, the defendants could have pursued an appeal from Judge Metzner's orders. In fact, they filed notices of appeal both from the initial order and from the order on rehearing. However, they failed to pursue these, and the appeals were dismissed for lack of prosecution. Although defendants now say the orders were unappealable, the denial of a stay pending arbitration in an action at law has long been held appealable under the doctrine of Enelow v. New York Life Ins. Co.,

6. In Pearlstein v. Scudder & German, 429 F.2d 1136 (2 Cir. 1970), cert. denied, 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971), this court sustained a private cause of action for violation of § 7 of the Securities Exchange Act. The Fifth Circuit has recently expressed some misgivings about the breadth of that opinion. Gordon v. duPont Glore Forgan, Inc., 487 F.2d 1260, 1262 (5 Cir. 1973).

293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935), and Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 192, 63 S.Ct. 163, 87 L.Ed. 176 (1942). See Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 293 U.S. 449, 452, 55 S.Ct. 313, 79 L.Ed. 583 (1935); Council of Western Electric Technical Employees v. Western Electric Co., 238 F.2d 892, 894–895 (2 Cir. 1956); Standard Chlorine of Delaware, Inc. v. Leonard, 384 F.2d 304 (2 Cir. 1967); 9 Moore, Federal Practice ¶¶ 110.20 [3], [4.1].

If the appeals had been pursued, we would have reversed. The 10b–5 claim was too "thin" to be rescued by the rule, restated in *Brod,* that a complaint need not *prove* that a plaintiff is entitled to recover. The complaint in *Brod* sufficiently alleged fraud in a traditional sense, even though it may have seemed doubtful that plaintiff could establish his claim. Here the complaint advanced nothing more than erroneous and perhaps unfounded predictions by a registered representative to an experienced speculator; there was no claim that Levien did not sincerely believe what he allegedly said or that no reasonable man would do so. The portion of the first count charging that the unauthorized short sale of April 21 "operated as a fraud and a deceit upon the plaintiff" was similarly lacking in any sufficient allegations of fraudulent conduct. Although the count claiming a violation of the margin requirements recited facts sufficient to survive a motion to dismiss, the affidavits that had already been submitted made it clear that defendants were entitled to summary judgment. In uncontroverted affidavits defendants demonstrated that, with one small exception, plaintiff's account was adequately margined throughout the disputed period. They pointed out that during the period that Dr. Kavit's account was being transferred from duPont to Stamm, the company properly computed the two accounts as if they were a single account, under § 6(d) of the Federal Reserve Board's Regulation T. In addition, defendants pointed out that §§ 3(b) and 3(g) of Regulation T permit "day-light trades": fluctuations in the customer's balance that would otherwise result in an insufficient margin are permissible if the customer is left with sufficient margin in his account at the end of the day. In light of these two principles, there was only one possible violation of the margin requirements during the April 16 to May 6 period. On April 22 plaintiff was sent a margin call for $322, which, after his protest, Levien allegedly told him to ignore. In fact the call was in error on the high side, resulting in part from a failure to take account of a small credit balance in one of the accounts transferred from duPont. The right figure was $36 but Stamm did not send out a new call until May 4. While this did constitute a technical violation, § 6(k) of Regulation T [7] excuses "innocent mistakes"; and if ever a transaction came within § 6(k), this was it. In view of that disposition of the federal claims, we would have reversed Judge Metzner's denial of a stay pending arbitration. Indeed, we would very likely have gone further and directed dismissal of the state claims since diversity jurisdiction failed for lack of sufficient amount, see note 3 *supra.*

Two years after dismissal of the appeals for lack of prosecution, a pre-trial conference was held, in September, 1969, before Judge Cannella. An extensive pretrial order, entered on May 14, 1970, reviewed the history of the case and outlined the issues to be tried. Nothing in the order indicated that defendants wished to have the two counts under the

7. This reads:
   If any failure to comply with this regulation results from a mistake made in good faith in executing a transaction, recording, determining, or calculating any loan, balance, market price or loan value, or other similar matter, the creditor shall not be deemed guilty of a violation of this regulation if promptly after the discovery of the mistake he takes whatever action may be practicable in the circumstances to remedy the mistake.

Securities Exchange Act tried first, so that they could move for a stay or dismissal if these were determined in their favor.

Ultimately, the trial occurred before Judge Bonsal in June, 1972. Levien could no longer be found, and Stamm had to rely on his deposition. No request was made for a separate trial of the federal claims, nor did the defendants ask Judge Bonsal to stay trial of or to dismiss the state claims. In an opinion rendered after completion of the trial, the court found there was no evidence to support either the 10b–5 claim or the claim for violation of the margin requirements. However, it thought the case appropriate for the exercise of pendent jurisdiction under *Gibbs* since the claims arose from "a common nucleus of operative fact" [8] and because "there is diversity of citizenship between the parties and the evidence satisfies the court that the plaintiff brought his action in good faith." [9] The judge refused to credit plaintiff's testimony that he had not authorized the second short sale but did believe his testimony that he had instructed Levien to cover in the range of 43–44. Accordingly, the judge awarded damages of $2,949.08, the difference between the actual loss of $3,602.26 and the $653.16 which plaintiff would have suffered if Levien had covered at 44, together with 6% interest from April 29, 1964 and costs. While we must confess that Dr. Kavit's testimony strains our credulity, especially with respect to his claim that he instructed Levien to cover the April 20 short sale if TGS should rise as little as ⅜ of a point, F.R.Civ.P. 52(a) directs that "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

Defendants argue that arbitrators knowledgeable in the ways of the marketplace would almost certainly have reached a different conclusion. This may well be so, and the guidelines laid down at the beginning of this opinion should correct such matters for the future. But the defendants here did not effectively protect their right to arbitration of the common law counts. They failed to prosecute their appeals from Judge Metzner's orders; they never moved for a dismissal or stay of the common law claims considered separately; and they made no attempt, either at the pretrial conference or at the trial, to obtain a determination of the claims under the Securities Exchange Act adverse to plaintiff so that they could move for a stay or dismissal unhampered by the presence of the federal counts.

■ In retrospect it appears clear that this simple $3000 negligence claim by a customer against his broker should never have been tried in a federal court. Yet by the time Judge Bonsal inherited the case for trial, the parties and the court had both invested a significant amount of time in it. While it would have been well within the judge's discretion to refuse to consider the state claims even at that late stage, see Rogers v. Valentine, 426 F.2d 1361, 1363 & n. 2 (2 Cir. 1970), such a refusal would have signaled a substantial waste of judicial energy. See Rosado v. Wyman, 397 U.S. 397, 403–404 & n. 4, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). We are thus faced with two choices, neither particularly attractive. One would be to send this small claim, nearly a decade old, back for the arbitration to which defendants would have been entitled if they had timely moved before Judge

8. While the counts under the federal and state claims are separate and distinct, the claims are not sufficiently divergent to offend the *Gibbs* requirement that they be "such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding," 383 U.S. at 725, 86 S.Ct. at 1138.

9. If the court meant there was diversity *jurisdiction* under 28 U.S.C. § 1332, we disagree for the reason stated in note 3. We assume the reference to good faith was meant to embrace a good faith belief in the validity of the federal claims. The judge was more charitable on this than we would be, but he had seen the plaintiff and we have not.

Bonsal for dismissal or a stay of the common law claims or for summary judgment on the federal claims. The other is to hold that, on the special facts here presented, the district court did not abuse its discretion by exercising pendent jurisdiction. Without enthusiasm we think the latter course more just under the circumstances, 28 U.S.C. § 2106.

Judgment affirmed. No costs.