**Denya McGEE, Plaintiff,**

v.

**Beverly GREEN, Kathleen Bahe, and Cathleen Simpson, Defendants.**

**No. 3:03CV1761 (DJS).**

United States District Court,
D. Connecticut.

March 30, 2006.

Dawne Westbrook, Middletown, CT, for Plaintiff.

Margaret Q. Chapple, Attorney General's Office, Hartford, CT, for Defendants.

### MEMORANDUM OF DECISION

SQUATRITO, District Judge.

On October 14, 2003, plaintiff Denya McGee filed this action alleging that defendants, Beverly Green, Kathleen Bahe, and Cathleen Simpson, who were employees of the State of Connecticut Department of Children and Families ("DCF"), violated her rights secured by the First Amendment to the U.S. Constitution and her right to equal protection under the law, as guaranteed by the Fourteenth Amendment to the U.S. Constitution, in violation of 42 U.S.C. § 1983 and § 1985. On April 15, 2005, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, defendants filed a motion for summary judgment. (*See* Dkt. # 48). For the reasons set forth herein, defendants' motion is **GRANTED**.

### I. FACTS

Plaintiff Denya McGee began her employment as a Social Worker trainee with the State of Connecticut Department of Children and Families ("DCF") in October of 1997. In the early part of 1998, McGee became a Social Worker. McGee worked in six different units in DCF's Bridgeport, Connecticut office from 1997 through 2003. In May of 2000, McGee asked to be transferred to the Foster Care and Adoptions Unit ("FASU") in Bridgeport, Connecticut. Her transfer was accepted, and she was placed under the supervision of Jane Guckgert, Social Worker Supervisor; Annie Christy, Program Supervisor; and Kathleen Bahe, Program Director. During McGee's tenure in FASU, there were several changes in her Social Worker Supervisor, but Annie Christy, until her retirement in June of 2003, and Kathleen Bahe remained her ultimate supervisors throughout the relevant time period.

In late 2002, Beverly Green received a promotion to Social Worker Supervisor

and was transferred to FASU in Bridge-port. When McGee learned that she would soon be assigned to report to Green, she expressed concern to her current Social Worker Supervisor, Achara Sessler, that the imminent transfer would result in a conflict of interest. Specifically, McGee questioned the propriety of reporting to Green while McGee was assigned to supervise Green's sister, Ms. B,[1] who was a DCF foster parent. McGee and Sessler had a meeting with Christy where McGee voiced her concerns about the matter, and Christy decided to transfer Ms. B's case and advised McGee to work directly with her regarding this case until it was reassigned or closed.

According to McGee, her concerns were realized when she was compelled to send a written reprimand to Ms. B. On February 5, 2003, McGee prepared a letter to be sent to Ms. B explaining some violations of policy she had committed with respect to a foster child in her care, suggesting remedial counseling, and informing her that a new Support Social Worker from the New Haven Office would now take over her case. Approximately a month later, McGee found this letter on Sessler's desk, and then sent the letter with the original date of February 5, 2003 after she and Christy executed it. Ms. B confronted McGee over the telephone on March 13, 2003 concerning the letter, and then complained to DCF administration regarding the same. On March 31, 2003, Kathleen Bahe sent a letter to Ms. B indicating that she was in receipt of the letters Ms. B sent to the Commissioner and explaining that McGee's letter was justified because Ms. B needed to be informed of certain issues. Bahe concluded that the letter was sent in accordance with DCF policy and concluded that, after her review of the file, Ms. B did,

in fact, violate DCF policy. Bahe also noted that, since no licensing action was taken, there would be no formal review or hearing regarding Ms. B's conduct. Bahe also assured Ms. B that all future correspondence would be sent in a more timely manner. McGee claims there was never a follow-up to her regarding this letter.

Apparently, McGee was not satisfied with the resolution of her concerns about the conflict of interest involving Green. McGee again expressed her displeasure regarding Christy's solution and believed that a conflict of interest still existed despite the fact that McGee never discussed the case with Green. McGee believed that once she was transferred to Green's unit, Green would have access to all her files, including all communications with Ms. B via the Computer/LINK Narrative. Further, after McGee's transfer, Ms. B told McGee that Green tells her how to interact with DCF, and Ms. B would know if McGee was doing her job because Green would tell her. McGee also claims that Green made veiled references to Ms. B, which McGee believes were directed at her, in unit meetings. On March 19, 2003, after a meeting with Ms. B regarding McGee's letter, McGee sent an email to Christy and Bahe requesting a transfer from Green's unit because of the conflict and other issues. Then, by early May, Ms. B's case was closed, and the foster child in her care was removed by another DCF unit from Ms. B's home for reasons unrelated to McGee's work. Nevertheless, McGee believed that Green harbored ill will toward her because of McGee's work in Ms. B's case.

McGee claims that she had expressed her discomfort from working with Green to her supervisors on a regular basis.

1. Because only her relation to Green is relevant for the purpose of deciding this motion, there is no need to refer to this individual by her actual name and risk compromising any interest related to the foster care of a child.

McGee not only informed Bahe of her discomfort, but McGee also stated it to Cathleen Simpson and Christy as well in written communications dated March 19, 2003, May 5, 2003, May 19, 2003, and June 12, 2003. In addition to the perceived conflict of interest, McGee alleged that, on many occasions, Green would yell and intimidate her in front of her co-workers. McGee also alleged that Green would yell and intimidate other people working with her in the unit, whether the person was present or not. McGee witnessed several employees becoming visibly upset in her presence when Green would lash out at them. Several times, McGee would tell Green if she needed to discuss a situation with a particular individual it would be best to do it in her office behind closed doors. McGee believes that Green did not like being told how she should act.

McGee's complaints were the impetus for an internal investigation of Green's conduct. On May 5, 2003, McGee sent an email to Christy, Bahe, Thomas Bisch, and Simpson requesting a reassignment to another unit. According to McGee, Green created a hostile work environment, and Green's behavior toward McGee was in retaliation for her treatment of Ms. B. Also on May 5, 2003, Simpson emailed Green a copy of McGee's message and told her that an administrative investigation had commenced. On May 19, 2003, McGee sent another email to Simpson outlining specific incidents and concerns with respect to the hostile work environment that Green allegedly created. After Simpson did not find a basis to take action on McGee's administrative complaint, McGee filed a grievance against Green on June 26, 2003, alleging that she created a hostile work environment by subjecting McGee to public embarrassment in front of co-workers, acting in a threatening and condescending manner, and using harsh and disrespectful language with McGee.

While McGee's grievance was pending, she and Green clashed about her job performance. On June 23, 2003, Green sent McGee a memorandum of formal counseling admonishing her for not keeping her supervisors apprised of the status of an appointment with a client. On August 26, 2003, Green sent McGee a memo commenting on her excessive use of sick leave. Green explained in her memo that unless she had approved time under the Family Medical Leave Act, she was subject to being placed on a medical certificate requirement, which would require a doctor's signature for approved absences. McGee replied back that her records were inaccurate and that she had requested her records and other information to verify her time. In September of 2003, Green sent an email to McGee regarding her job performance expectations, specifically regarding typing her statistics because Green could not read her handwriting. McGee contends that Green's criticism was unfounded and unfair.

During this time, in July or August of 2003, Simpson investigated complaints against McGee. Bahe and Green alleged that McGee made excessive and inappropriate use of her state telephone and computer. Also, Bahe alleged that McGee requested a foster parent to write a letter on McGee's behalf regarding her problems at work. Simpson investigated and found that McGee did not misuse her computer, but she did find that over a four-month sample period, McGee made excessive personal use of her phone to call her daycare provider. Simpson also found that McGee's request to the foster parent to write a letter on her behalf was inappropriate and showed poor judgment. On August 28, 2003, McGee received a letter from Simpson indicating her findings regarding misuse of state equipment and inappropriate conduct with a client. A pre-disciplinary hearing was set for Sep-

tember 11, 2003, and McGee was informed of her right to union representation and that disciplinary action to and including dismissal could be imposed.

The hearing took place on September 11, 2003, with McGee, Sandy Dearborn, who was the union president, Elizabeth Anderson, who was a union representative, Simpson, and Bahe present. Simpson made the first presentation regarding McGee's misuse of state equipment, which Dearborn rebutted. McGee also offered to pay for the personal telephone usage. McGee's request for a letter from a client was not discussed. After the presentations, the parties separated, and Dearborn then began negotiating with Simpson and Bahe. Dearbon explained to McGee that Simpson had already spoken to her supervisor, Wanda Esterella, about termination, and that either McGee would negotiate an agreement where she would leave the Bridgeport FASU unit or would lose her job. McGee agreed to leave FASU, to transfer to another office, to forgo the grievance against Green, and to receive a ten-day suspension without pay. Even though McGee was reluctant to agree to these terms, and was under what she perceived to be undue pressure from DCF to accept them, Dearborn told her that she needed to agree in order to save her job.

On September 12, 2003, McGee's attorney sent a letter to Simpson purporting to revoke the Stipulated Agreement as invalid. Simpson rejected this claim, and, on September 15, 2003, directed McGee to report to Ann Steers in FASU for two weeks until she could be transferred to another unit on October 1, 2003. McGee went on maternity leave at the end of November of 2003 and came back to work in July of 2004. While McGee was on maternity leave, she requested a transfer to the permanency unit in the New Haven office, which was accepted. McGee also tried to become part of the FASU unit in New Haven, but although there were spots available, the program director, Shirley Brinkly, told McGee she could not fill any of the spots because DCF was contemplating privatizing FASU.

## II. DISCUSSION

McGee alleges that defendants imposed discipline upon her in retaliation for her protected speech regarding the conflict of interest involving Green. McGee also claims that defendants' decision to impose discipline was irrational in view of defendants' failure to impose discipline upon similarly situated individuals. Defendants claim that their decision to discipline McGee was not the product of illegal retaliation or otherwise irrational.

### A. STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate if, after discovery, the non-moving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" *American Int'l Group, Inc. v. London Am. Int'l Corp.*, 664 F.2d 348, 351 (2d Cir.1981) (quoting *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975)). A dispute concerning a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch.*

*Dist.,* 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. *See Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Id.*

## B. FIRST AMENDMENT RETALIATION

McGee claims that defendants disciplined her in retaliation for her speaking out on matters of public concern in violation of the First Amendment to the U.S. Constitution. She argues that her commentary regarding the conflict of interest created when Green became her supervisor was defendants' motivation for imposing discipline upon her, and that she was therefore denied rights to which she is entitled pursuant to 42 U.S.C. § 1983.

▬ A public employer cannot discharge or retaliate against an employee for the exercise of the employee's First Amendment rights. *See Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Thus, in *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the Supreme Court struck a balance between the right of the employee to speak and the employer's interest in effectively conducting its affairs. "The *Pickering* test involves a two-step inquiry: first, a court must determine whether the speech which led to an employee's discipline relates to a matter of public concern; and, second, if so, the balance between free speech concerns is weighed against efficient public service to ascertain to which the scale tips." *Melzer v. Board of Education of City School Dist. of City of New York,* 336 F.3d 185, 193 (2d Cir.2003). To succeed on her First Amendment claim, McGee "must demon-strate by a preponderance of the evidence that the speech at issue was protected, that she suffered an adverse employment action, and there was a causal connection between the protected speech and the adverse employment action." *Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir.1994).

The threshold issue is whether McGee's speech relates to matters of public concern such that it is worthy of First Amendment protection. "*Pickering's* balancing test applies only when the employee speaks 'as a citizen upon matters of public concern' rather than 'as an employee upon matters only of personal interest.'" *Harman v. City of New York,* 140 F.3d 111, 117 (2d Cir.1998) (quoting *Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Connick,* 461 U.S. at 146, 103 S.Ct. 1684. As such,

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Id.* at 147, 103 S.Ct. 1684. "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen,* 165 F.3d 154, 163 (2d Cir.1999).

■ McGee's speech is not protected by the First Amendment because she spoke as an "employee upon matters only of personal interest." *Connick,* 461 U.S. at 147, 103 S.Ct. 1684. McGee argues that she spoke on matters of public concern because she raised a conflict of interest that violated DCF regulations and therefore could conceivably have compromised the quality of foster care provided to children committed to DCF's supervision. The substance of McGee's complaints themselves, however, does not reflect a desire to advance a public interest, but rather reflects McGee's personal disapproval of Green's supervision. Further, Christy's resolution of the conflict conformed with DCF regulations and mitigated any negative effect on the welfare of the foster child by insuring that Green would never be in a position to take action with respect to Ms. B. Therefore, with no potential for an adverse impact upon the welfare of a child or the foster care system in general, there is no nexus between McGee's complaints and the public interest. McGee's complaints do not address matters of concern to the public, but rather her own personal discomfort with working for Green, which she feared would be exacerbated by her continued supervision of Ms. B notwithstanding resolution of the potential conflict. Although the situation was awkward for McGee, her complaints do not raise any issue of concern to the public.

McGee's complaints are not significant to the public simply because she works for an organization with a sensitive public mission. "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case." *Id.* at 149, 103 S.Ct. 1684. Although, in some instances, problems in a public workplace may be intrinsically significant enough to warrant public attention, the matters about which McGee has spoken are not of the character expected to be of special importance to the public at large. *Cf. Nichol v. ARIN Intermediate Unit 28,* 268 F.Supp.2d 536, 558 (W.D.Pa.2003) ("On the other side of the public concern coin [from comments upon matters outside the issues of the workplace], and presenting more complexity, are employees' comments directed internally at issues in or affecting the workplace, ranging from idle office gossip and chit-chat (usually not public concern speech) to comments about safety, performance, corruption and other such larger issues of general interest to the public (usually deemed to be matters of public concern)."). Defendants' motion is therefore granted with respect to McGee's § 1983 and § 1985 retaliation claims.

## C. EQUAL PROTECTION

■ McGee claims that defendants violated her right to equal protection under the law by imposing an disproportionately harsh sanction upon her for her conduct described in Simpson's investigative report. The Fourteenth Amendment to the United States Constitution provides that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws," and is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Traditionally, equal protection claims were premised on the idea that the plaintiff was a member of a protected class. The Supreme Court has held, however, that a plaintiff need not be a member of a traditionally "protected class" in order to allege an equal protection violation. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). Instead, a "class of one" may maintain an equal protection claim "where the plaintiff

alleges that [ ]he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.*

 "In order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." *Neilson v. D'Angelis,* 409 F.3d 100, 104 (2d Cir.2005). As such, a plaintiff who brings a "class of one" claim must prove that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Id.* at 105.

 McGee has not presented sufficient evidence to bring her equal protection claim before a jury. McGee, citing several examples, claims that other employees were not disciplined for misusing state equipment. The undisputed evidence, however, does not support the conclusion that no rational factfinder could find a basis to treat these employees and McGee differently because Simpson found that McGee had improperly solicited a letter from a foster parent interceding in a dispute McGee was having with Green regarding an appointment. As such, a rational person could determine that the combination of infractions for the misuse of the state telephone and the improper solicitation of a letter from a client was a principled reason to treat McGee differently than others who had only misused state equipment in a manner similar to McGee. Defendants' motion is granted with respect to McGee's equal protection claim.

### D. STATE LAW CLAIMS

 Because judgment shall enter in favor of defendants on McGee's federal claims, McGee's only remaining claim is that defendants inflicted emotional distress upon her. "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Castellano v. Board of Trustees of the Police Officers' Variable Supplements Fund,* 937 F.2d 752, 758 (2d Cir.1991) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). "If it appears that the federal claims ... could be disposed of on a motion for summary judgment under F.R.Civ.P. 56, the court should refrain from exercising pendent jurisdiction absent exceptional circumstances." *Kavit v. A.L. Stamm & Co.,* 491 F.2d 1176, 1180 (2d Cir.1974). For these reasons, McGee's state claim shall be dismissed without prejudice.

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (dkt.# 48) is **GRANTED**. Judgment shall enter in favor of each defendant on Counts One, Two and Three of the Complaint; Count Four is **DISMISSED without prejudice**. The Clerk of the Court shall close this file.