**Leonard DESSER et al., Plaintiffs,**

**v.**

**Roy A. ASHTON et al., Defendants.**

**No. 69 Civ. 1767.**

United States District Court,
S. D. New York.

Nov. 7, 1975.

Robert S. Cohen, Lans, Feinberg & Cohen, New York City, for plaintiffs.

Martin I. Shelton, Shea, Gould, Climenko, Kramer & Casey, New York City, for defendants.

PIERCE, District Judge.

### OPINION

As this action goes to trial it contains three claims. The first is based on federal securities law, specifically, on Section 10(b) of the 1934 Exchange Act and Rule 10b–5. The second and third are state law claims brought in this court

pursuant to the doctrine of pendent jurisdiction. See *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The federal cause of action is based primarily on allegations of fraud in connection with an alleged oral agreement between defendant Ashton and the plaintiffs for the purchase by the plaintiffs of certain securities. It is undisputed that no purchase or sale of securities actually took place.

The pre-trial briefs of the parties raised, but discussed only briefly, the question of whether or not this alleged oral agreement, even if proved, was a contract for purchase or sale such as would satisfy the "purchaser-seller" requirement in Rule 10b–5 actions. In particular, the question arose as to whether the contract could satisfy the "purchaser-seller" requirement if it was not an enforceable contract under the applicable law including the statute of frauds. Earlier complaints in this action, were twice dismissed on other grounds without specific consideration of this question.

■ In this action, were the federal claims to fall *prior to trial*, the pendent claims would also be dismissed. See *United Mine Workers v. Gibbs, supra*, at 726–27, 86 S.Ct. 1130; *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176 (2d Cir. 1974). This result would prevent unnecessary decisions of state law by this federal court. Therefore on November 5, 1975, in consideration of these factors, the Court vacated its earlier denial of the defendants' motion for summary judgment, adjourned the trial of the action and directed the parties to brief the issues regarding the sufficiency of the oral contract to support a private action under Rule 10b–5 where no actual purchase or sale took place.

■ The Court has considered the submissions of the parties, and conducted its own survey of the applicable law. Based on this review of the law, the Court concludes that an action under Section 10(b) and Rule 10b–5, which relies on a contract for the purchase or sale of securities to satisfy the "purchaser-seller" jurisdictional requirement of the Act, is not deficient as a matter of law simply because the contract relied on for the purposes of satisfying this requirement is oral rather than written. In particular, neither the Court nor the parties have found any authority directly supporting the proposition that a contract must satisfy the statute of frauds in order to support a 10b–5 action.

The requirement that a plaintiff be either a purchaser or seller of securities in order to bring a private action under Section 10(b) and Rule 10b–5 has recently received the imprimatur of the Supreme Court. See *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539, 43 U.S.L.W. 4707 (U.S. June 9, 1975). However, the Court did not purport to overrule, in fact it specifically recognized the established interpretation of the requirement to the effect that a contract for the purchase or sale of securities will satisfy this requirement. *Id.* at 748, 95 S.Ct. at 1931, 44 L.Ed.2d at 556, 43 U.S.L.W. at 4715.

The Court in *Manor Drug* did not have occasion to discuss the type of contract which must exist in order to meet the "purchaser-seller" requirement. Surprisingly, the efforts of the parties and the Court here indicate that there is little case law dealing with this point. The only authority found by the Court directly discussing the issue is a statement by Professor Louis Loss in the 1961 edition of his text on Securities Regulation. He states:

> "If X resorts to a fraudulent device to escape a contractual obligation to buy Y's securities, the device would seem no less unlawful under Rule 10b–5 because the contract later turned out to be unenforceable on account of some illegality on the part of Y. Just as not every breach of contract violates the rule, it is equally true that there can be a violation of the rule, . . . without an enforceable contract." 3 L. Loss, Securities Regulation 1473 n. 102 (2d ed. 1961).

█ The paucity of case law does not mean that there are no general principles to guide a decision on this question. It is now well settled that the anti-fraud provisions of Rule 10b–5 are to be liberally and flexibly construed so as to further the aim of Congress to protect investors from fraud and maintain a free and open securities market. See *Superintendent of Insurance v. Bankers Life and Cas. Co.*, 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); *SEC v. Capital Gains Research Bur.*, 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963); *Commerce Reporting Co. v. Puretec, Inc.*, 290 F.Supp. 715 (S.D.N.Y.1968). It has been specifically held that this admonition should apply to the term "contract" as defined in the 1934 Exchange Act; see *Mt. Clemens Industrials, Inc. v. Bell*, 464 F.2d 339 (9th Cir. 1972), and to the "purchaser-seller" requirement. See *Herpich v. Wallace*, 430 F.2d 792 (5th Cir. 1970).

The majority of cases in which a contract to purchase or sell, but not an actual purchase or sale, was present have dealt with the issues raised without discussing the nature of the contract involved, or commenting on the significance of whether it was written or oral. See, e. g., *Walling v. Beverly Enterprises*, 476 F.2d 393 (9th Cir. 1973); *Allico National Corp. v. Amalgamated Meat Cutters & Butchers Workmen of North America*, 397 F.2d 727 (7th Cir. 1968); *A.T.Brod & Co. v. Perlow*, 375 F.2d 393 (2d Cir. 1967). One opinion, however, while not overtly discussing the issue, clearly proceeds throughout on the assumption that an oral contract for the sale of securities, if proved, would satisfy the jurisdictional requirements of Section 10(b). See *Pepsico, Inc. v. W.R. Grace & Co.*, 307 F.Supp. 713, 719 (S.D.N.Y.1969). *Dopp v. Franklin National Bank*, 461 F.2d 873 (2d Cir. 1972) (Kaufman, J.) is not to the contrary. There the Court cited the fact that contracts for the sale of securities are required to be in writing under New York law (U.C.C. § 8–319) as bearing on whether or not a contract existed in that case, but did not suggest that the absence of a contract in writing in that case was jurisdictionally fatal to the plaintiff's claim. In fact, after reversing the granting of a preliminary injunction, the Court of Appeals remanded the case for trial on the merits. *Id.* at 882.

The other cases relied upon by the defendants are likewise not conclusive. While it cannot be gainsaid that the *Manor Drug* opinion contains strong language concerning the dangers of parole evidence in the proof of 10b–5 claims, the context of that language cannot be ignored. There the Supreme Court was discussing the situation where a nonpurchaser of securities alleges not that he had an oral contract to purchase securities but simply that he himself refrained from purchasing due to reliance on an alleged misrepresentation or omission. *Id.* 421 U.S. at 732, 738, 95 S.Ct. at 1924, 1928, 44 L.Ed.2d at 547, 552, 43 U.S.L.W. at 4710, 4713. The hypothetical situation there is clearly distinguishable from the case at bar, at least because of the availability of the testimony of other witnesses to confirm or contradict the oral testimony of the plaintiffs.

*Ingenito v. Bermec Corp.*, 376 F.Supp. 1154 (S.D.N.Y.1974) is probably the most helpful case for the defendants' view of the law. However, even that case stops short of holding that a purchase or sale can *only* arise from a contract when the nature and terms of an investor's involvement are substantially altered by the creation of new rights and obligations. It states, rather, only that certain cases "seem to stand for the proposition" that a purchase or sale will arise in such a situation. *Id.* at 1181.

*Ashton v. Thornley Realty Co.*, 346 F.Supp. 1294 (S.D.N.Y.1972), *affirmed in open court*, 471 F.2d 647 (2d Cir. 1973) deals only with the question of whether there was a contract to purchase for Rule 10b–5 purposes where a document relied upon, *by its own terms*, said that it was subject to the approval by the Board of the corporation involved. *Id.* at 1299. Not surprisingly, the Court held that there was not a contract under those circumstances.

In the absence of any clear authority requiring that a contract to purchase or sell relied upon for jurisdictional purposes under Section 10(b) and Rule 10b–5 must be in writing; and in view of the broad anti-fraud purposes of this section; and, not incidentally, in light of the view of the Court of Appeals for this Circuit with respect to motions for summary judgment, *see, most recently, Heyman v. Commerce and Industry Insurance Co.,* 524 F.2d 1317 (2d Cir. 1975), the Court determines that the appropriate course at this juncture is to proceed with the taking of the evidence in this case. This does not mean, of course, that the Court has made any findings with respect to the merits of the action, particularly, with respect to the question of whether or not there was a contract between the plaintiffs and defendants in this action. It means only that the Court has determined that there are issues to be tried with respect to these matters, and that the Court has jurisdiction over them.

Accordingly, all outstanding dispositive motions of the defendants are hereby denied.

It is so ordered.