D. Frank CAMPITO, Plaintiff,

v.

McMANUS, LONGE, BROCKWEHL, INC., John J. McManus, Systomation, Inc., Donald Hatt, Esq., as Trustee in Bankruptcy of Systomation, Inc., and Virginia W. Anderson, as Executrix of the Estate of Stanley D. Anderson, Defendants.

No. 75–CV–418.

United States District Court, N. D. New York.

April 20, 1979.

Burke, Cavalier & Krolick, Albany, N. Y., for plaintiff; Roland M. Cavalier, Albany, N. Y., of counsel.

Tobin & Dempf, Albany, N. Y., for defendants McManus, Longe, Brockwehl, Inc. and John J. McManus; Charles J. Tobin, III, Albany, N. Y., of counsel.

## MEMORANDUM–DECISION and ORDER

JAMES T. FOLEY, Chief Judge.

Plaintiff D. Frank Campito commenced this action on August 21, 1975, seeking money damages based upon alleged violations of certain antifraud and registration provisions of the federal securities laws as well as state law. By leave of court, an amended complaint was filed on February 4, 1977, substituting Virginia W. Anderson, as Executrix of the Estate of Stanley D. Anderson, for Stanley D. Anderson and adding Donald Hatt, Esquire, as Trustee in Bankruptcy of Systomation, Inc., as parties-defendant. In this amended complaint, plaintiff's first and second claims for relief contain allegations with respect to defendants McManus, Longe, Brockwehl, Inc., ("MLB") and John J. McManus ("McManus") founded on violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5, 17 C.F.R. § 240.10b–5 (1978), § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (First Claim For Relief), and § 12(1) of the Securities Act of 1933, 15 U.S.C. § 77l(1) (Second Claim For Relief). Plaintiff's third and fourth claims for relief assert similar claims against defendants Systomation, Inc., Donald Hatt, Esquire, as Trustee in Bankruptcy of Systomation, Inc., and Virginia W. Anderson, as Executrix of the Estate of Stanley D. Anderson. The remaining seven claims for relief in plain-

tiff's amended complaint, five of which are brought against defendants MLB and McManus while two are brought only against defendant McManus, are pendent claims based on New York law.

Now before the Court is a motion by defendants MLB and McManus pursuant to Rule 56, Fed.R.Civ.P., for summary judgment dismissing the first and second claims for relief on the ground that they are barred by the applicable statutes of limitations and dismissing the fifth, sixth, seventh, eighth, ninth, tenth, and eleventh claims for relief on the ground of lack of jurisdiction over the subject matter.

## FACTUAL BACKGROUND

Unfortunately, the recitation of facts underlying the instant motion are not as clearly presented as they could have been had the attorneys been aware of a recent amendment to the General Rules of this Court. See N.D.N.Y.R. 10(e) (statement of material facts as to which a party contends there is or is not genuine issue to be tried shall be annexed to moving or opposing papers on motion for summary judgment) (effective August 23, 1978). This amendment is not contained in previously issued pamphlets of the General Rules and is to be brought to the attention of the attorneys when summary judgment motions are filed. Furthermore, to aid in the future prosecution of this lawsuit, attention is directed to 15 U.S.C. §§ 77c(a)(11) and 77d(2) together with 17 C.F.R. §§ 230.144, 230.146, and 230.-147 (1978). In any event, the facts appear as follows.

Preliminarily, it should be noted with respect to the individual defendants named in this action that Stanley D. Anderson was the president and a director of Systomation, Inc., at all times referred to in the amended complaint. Likewise, John J. McManus was a director of MLB as well as Systomation, Inc., at all time pertinent to this lawsuit.

The events leading to the commencement of this action began in September of 1969 when MLB entered into a construction contract with Systomation, Inc., whereby MLB assumed the responsibilities of general con-

tractor for the construction of the corporate headquarters of Systomation, Inc., to be located in Clifton Park, Saratoga County, New York. At about the same time, MLB entered into a subcontract with Campito Plumbing and Heating, Inc., for all the plumbing, heating, and air conditioning work on this project. Plaintiff apparently is the founder and principal shareholder of Campito Plumbing and Heating, Inc., as well as its president.

Work commenced on the project and proceeded without incident until some time during the summer of 1970 when the construction lender, Schenectady Trust Company, advised MLB that it would make no further advances on its construction funding to Systomation, Inc. It is asserted that at that time, Systomation, Inc., owed MLB approximately $494,000.00 of which about $394,000.00 was owed by MLB to its subcontractors.

On or about August 1, 1970, construction on the project ceased, MLB filed a mechanics' lien against the property, and a receiver was appointed to protect the work in place. Thereafter, Systomation, Inc., made efforts to find additional sources of revenue so that the construction could resume and the contractors paid. The culmination of this effort occurred on December 4, 1970, when an Escrow Agreement was executed. Motion For Summary Judgment, Exhibit C, filed October 25, 1978. This agreement provides, among other things, that certain named investors, including MLB, would subscribe for shares of common stock in Systomation, Inc. In addition, MLB agreed to release its mechanics' lien and discharge the receiver. It is alleged that a registration statement was never filed with the Securities and Exchange Commission or in effect in connection with the issuance and distribution of these securities.

Plaintiff, who was not a party to the negotiations that led to the execution of the Escrow Agreement, did not sign this agreement. Then, on or about December 31, 1970, MLB executed an "Investment Letter" and delivered it to the Escrow Agent, the Schenectady Trust Company, under the

terms of the Escrow Agreement. Motion For Summary Judgment, Exhibit D, filed October 25, 1978. This letter creates restrictions on the transferability of the stock of Systomation, Inc., issued to MLB under the Escrow Agreement. Pursuant to this agreement, Systomation, Inc., issued 10,000 shares of stock to MLB on or about January 29, 1971.

Thereafter, John J. McManus, on behalf of MLB, allegedly offered to sell 12,500 shares of Systomation, Inc., stock to the plaintiff. Plaintiff maintains that he initially thought that McManus was negotiating a purchase by plaintiff directly from Systomation, Inc., but only later learned that the stock to be sold to him was Systomation, Inc., stock that MLB had previously obtained pursuant to the Escrow Agreement. Subsequently, on or about May 5, 1971, MLB sent a letter to plaintiff confirming an agreement between plaintiff and MLB whereby plaintiff would accept stock in lieu of cash payment on the construction project. More specifically, plaintiff agreed to accept 10,000 shares of Systomation, Inc., stock in lieu of $50,000.00 due to Campito Plumbing and Heating, Inc., on its subcontract upon completion of the project, which by that time had been resumed.

On May 10, 1971, this agreement between plaintiff and MLB was amended as follows:

> The undersigned do hereby ratify and confirm the Escrow Agreement dated December 4, 1970, and the addenda pertaining thereto, under which the rights to purchase, options to purchase, the issuance of stock warrants are set forth. A copy of said Escrow Agreement and addenda is annexed hereto.
>
> The undersigned do agree to be bound by the conditions and limitations expressed herein concerning the purchase, the ownership, the holding of and the sale or disposition of said stock.

Motion For Summary Judgment, Exhibit F, filed October 25, 1978; Affidavit of D. Frank Campito, ¶ 9, filed December 1, 1978. This amendment was signed by plaintiff individually and as president of Campito Plumbing and Heating, Inc. Plaintiff contends, however, that the Escrow Agreement and addenda pertaining thereto were not in fact annexed to this agreement. Therefore, plaintiff asserts that whereas the "Investment Letter" is the only document that contains any restrictions against the future transfer of Systomation, Inc., stock he only learned of the restrictions against transfer at a much later date.

On or about June 3, 1971, plaintiff exercised an option to purchase an additional 2,500 shares of Systomation, Inc., stock by tendering to MLB a check for $12,500.00. This was acknowledged by MLB on July 27, 1971. Then, on February 8, 1972, the construction project having been completed, Campito Plumbing and Heating, Inc., received final payment on its subcontract from MLB, approximately $60,000.00, and plaintiff tendered a check to MLB for $50,-000.00 for the 10,000 shares of Systomation, Inc., stock that plaintiff had agreed to purchase. Plaintiff further alleges that on July 27, 1971, and on February 8, 1972, MLB mailed separate photocopies of stock certificates purportedly indicating that plaintiff had a 2,500 and a 10,000 share interest, respectively, in shares of Systomation, Inc., stock held by MLB. Amended Complaint, ¶ 21; Affidavit of D. Frank Campito, ¶¶ 13, 15, filed December 1, 1978.

It appears that on or about June 15, 1971, Systomation, Inc., had issued 25,000 shares of its common stock to MLB, 10,000 shares of which were to be held by MLB for the benefit of the plaintiff. It further appears that on or about June 25, 1971, Systomation, Inc., had issued 8,750 shares of its common stock to MLB, 2,500 shares of which were to be held by MLB for the benefit of the plaintiff. The certificates issued by Systomation, Inc., representing these shares allegedly bear a legend stating:

> The transfer of the shares represented by this certificate or any interest therein is subject to the conditions in an Agreement pursuant to the Securities Act of 1933, dated December 31, 1970, among the Company and various investors, and no

transfer of these shares or any interest therein shall be valid or effective until such conditions have been fulfilled.

Amended Complaint, ¶ 18.

Plaintiff alleges that MLB and McManus represented that sale of Systomation, Inc., stock could be completed and stock transferred to the plaintiff, with separate certificates broken out and registered in plaintiff's name, after completion of construction. When this did not occur, plaintiff made additional inquiries and was informed by MLB and McManus that there would be additional delays and that the shares would be transferred after a two-year waiting period. Plaintiff asserts that he was not informed of any other restrictions on the transfer of these shares other than this waiting period. After two years elapsed, on February 27, 1974, plaintiff asked Systomation, Inc., to issue a stock certificate in plaintiff's name. That request was repeated on April 24, 1974. After receiving no response, plaintiff wrote to MLB and McManus requesting that they arrange for the transfer to plaintiff's name of the 12,-500 shares of Systomation, Inc., stock that MLB was holding for his benefit. MLB asserts that it attempted to comply with plaintiff's request, but that Systomation, Inc., refused to issue new certificates unless it was assured that such action would not require registration with the Securities and Exchange Commission. Systomation, Inc., however, maintains that the shares issued to MLB pursuant to the Escrow Agreement were for investment only and without a view toward further distribution.

Plaintiff asserts that in early 1975 he was still being assured by MLB and McManus that the stock would be transferred without further restriction once a period of time had passed and that on February 11, 1975, plaintiff again requested MLB to transfer the stock to plaintiff's name. This has never been done. Consequently, on August 21, 1975, this action was commenced to recover from the defendants the $62,500.00 that plaintiff paid in consideration for 12,500 shares of Systomation, Inc., stock and to recover an award of $100,000.00 punitive damages against defendant McManus.

Thereafter, on February 25, 1976, defendant Systomation, Inc., filed an original petition under Chapter XI of the Bankruptcy Act and on July 22, 1976, after an adjudication in Bankruptcy, Donald Hatt was appointed Trustee in Bankruptcy. Additionally, on April 22, 1976, defendant Stanley D. Anderson died and Virginia W. Anderson was subsequently appointed executrix of his estate.

## DISCUSSION

### A

Plaintiff's first claim for relief alleges violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5, 17 C.F.R. § 240.10b–5 (1978), and § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a).

#### i

■ Defendants MLB and McManus move for summary judgment dismissing plaintiff's first claim for relief insofar as it is brought under § 10(b) of the 1934 Act and Rule 10b–5, promulgated thereunder by the Securities and Exchange Commission, as barred by the applicable statute of limitations. It is well established that because there is no federal statute of limitations governing such claims, a federal court must look to the limitation period that the forum state applies to that state's cause of action that bears the closest substantive resemblance to these federal claims and that best effectuates the policies underlying the federal securities laws. *See, e. g., Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Stull v. Bayard,* 561 F.2d 429, 431 (2d Cir. 1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978). *Cf. Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462–65, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

The Court of Appeals, Second Circuit, has consistently held that New York's statute of limitations governing common law fraud is applicable to a private claim brought under § 10(b) and Rule 10b–5. *E. g., Phil-*

lips v. Levie, 593 F.2d 459 (2d Cir. 1979); Klein v. Auchincloss, Parker & Redpath, 436 F.2d 339, 341 (2d Cir. 1971). Nevertheless, the defendants on this motion contend that the cause of action embodied in New York's Blue Sky Law, N.Y.General Business Law Article 23–A (McKinney 1968), as amended, (McKinney Supp.1978) (popularly known as the Martin Act), most closely resembles the right of action recognized under these provisions of the 1934 Act, which prohibit, among other things, the use of any manipulative or deceptive device in connection with the sale or purchase of a security. Compare N.Y.Gen.Bus.Law § 352–c(1) and N.Y.Gen.Bus.Law § 352–c(2), with 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b–5 (1978).

This argument presents what appears to be an issue of first impression with regard to the applicability of a limitation period associated with New York's Blue Sky Law to claims brought under the 1934 Act. See generally Stull v. Bayard, supra, 561 F.2d at 432 n. 3. Pursuant to § 352–c of New York's Blue Sky Law it is a misdemeanor to use or employ, among other things, any fraud, deception, or representation to induce or promote the sale of a security. Furthermore, although this provision is penal in nature, it has been held that it is broad enough to imply a private cause of action. Barnes v. Peat, Marwick, Mitchell & Co., 69 Misc.2d 1068, 1072, 332 N.Y.S.2d 281 (Sup.Ct.N.Y.County 1972), modified on other grounds, 42 A.D.2d 15, 344 N.Y.S.2d 645 (1st Dep't 1973) (per curiam); cf. Atkin v. Hill, Darlington & Grimm, 15 A.D.2d 362, 224 N.Y.S.2d 553 (1st Dep't 1962), aff'd mem., 12 N.Y.2d 940, 238 N.Y.S.2d 516, 188 N.E.2d 790 (1963). See 3 L. Loss, Securities Regulation 1661–69 (2d ed. 1961). Accord, Superintendent of Insurance v. Freedman,

443 F.Supp. 628, 637 (S.D.N.Y.1977); Lupardo v. I. N. M. Industries Corp., 36 F.R.D. 438, 439 (S.D.N.Y.1965). But see Ch. 559, § 1, N.Y.Laws 1250 (McKinney 1976) [codified at N.Y.Gen.Bus.Law § 353(3) (McKinney Supp.1978)]; cf. Sajor v. Ampol, Inc., 275 N.Y. 125, 9 N.E.2d 803 (1937). The contours of such a cause of action, however, have yet to be defined. The defendants assert that this Court should apply New York's three year statute of limitations governing actions to recover upon a liability created by statute, see N.Y.C.P.L.R. § 214(2) (McKinney Supp.1978), to this inferred cause of action [1] and also to plaintiff's first claim for relief insofar as it is asserted under the 1934 Act.

In response, plaintiff maintains that the applicable statute of limitations is New York's statute governing common law fraud, which is six years from the commission of the fraud or two years from the actual or imputed discovery thereof, whichever is longer. See N.Y.C.P.L.R. §§ 213(8), 203(f) (McKinney 1972), as amended, (McKinney Supp.1978).

■ In determining what state statute is most analogous and should be applied to a claim brought under § 10(b) and Rule 10b–5, a court must compare and contrast various substantive provisions of state law with the substantive provisions of these federal rights of action. Accordingly, it appears that scienter, in its more rigorous sense, is not required under § 352–c as it ostensibly is in most situations under § 10(b) and Rule 10b–5. Compare N.Y.Gen.Bus.Law § 352–c(1)(b) and (1)(c), with Ernst & Ernst v. Hochfelder, supra, 425 U.S. at 193, 193–94 n. 12, 96 S.Ct. 1375 and United States v.

---

1. It is conceivable that the courts of the State of New York could interpret § 352–c to require an element of scienter, see N.Y.Gen.Bus.Law § 353 (McKinney 1968), as amended, (McKinney Supp.1978); People v. Bunge Corp., 25 N.Y.2d 91, 302 N.Y.S. 785, 250 N.E.2d 204 (1969); People v. Wachtell, 181 Misc. 1010, 47 N.Y.S.2d 945 (Sup.Ct.N.Y.County 1943), appeal dismissed, 269 App.Div. 939, 57 N.Y.S.2d 130 (1st Dep't 1945); Ultramares Corp. v. Touche, 255 N.Y. 170, 179, 174 N.E. 441, 444 (1931) ("Fraud includes the pretense of knowledge

when knowledge there is none."), and might choose to apply New York's six year statute of limitations applicable to "an action based upon fraud," N.Y.C.P.L.R. § 213(8) (McKinney Supp. 1978), see also N.Y.C.P.L.R. § 213(1) (McKinney 1972); People v. Wachtell, 181 Misc. 1012, 47 N.Y.S.2d 173 (Sup.Ct.N.Y.County 1943), to this claim. See 3 L. Loss, Securities Regulation 1667 & n. 181 (2d ed. 1961). If that were the case, the result reached in this action with regard to this claim would not be different.

*Chiarella,* 588 F.2d 1358, 1370–71 (2d Cir. 1978). Moreover, while § 10(b) and Rule 10b–5 have a "purchaser-seller" requirement, § 352–c creates liability regardless of whether a sale, or even negotiations, ultimately resulted between the parties. *Compare Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Desser v. Ashton,* 408 F.Supp. 1174 (S.D.N.Y.1975), *aff'd mem.,* 573 F.2d 1289 (2d Cir. 1977) *and* 15 U.S.C. § 78c(a)(14), *with* N.Y.Gen.Bus.Law § 352–c(1).

It is evident, therefore, that the implied cause of action under New York's Blue Sky Law, if it indeed exists, is much broader than the right of action recognized under § 10(b) and Rule 10b–5. Conversely, it is clear to my mind that the right of action under § 10(b) and Rule 10b–5 closely approximates the right of action afforded by common law fraud. *See, e. g., Reno v. Bull,* 226 N.Y. 546, 550, 124 N.E. 144 (1919).

■ The Court of Appeals, Second Circuit, while applying Texas law and choosing between two state statutes of limitations to apply to a § 10(b) and Rule 10b–5 claim, has stated:

> [W]hen one state statute allowing securities fraud suits provides a broader cause of action . . . than does [§ 10(b) and] rule 10b–5 . . . and at the same time has a longer statute of limitations . . . the statute of limitations associated with the broader [state] cause of action should be applied to [a federal securities fraud claim under § 10(b) and Rule 10b–5 rather than a shorter statute of limitations associated with a second state cause of action that is narrower in application].

*Berry Petroleum Co. v. Adams & Peck,* 518 F.2d 402, 409 (2d Cir. 1975). This reasoning can also be applied to the matter before this Court. Where, as in this case, one state statute provides a broader cause of action than do these antifraud provisions of the 1934 Act but has a shorter statute of limitations than another state cause of action, which more nearly resembles a claim under the federal securities laws, the broader state cause of action should not operate to defeat a claim under § 10(b) or Rule 10b–5.

■ Thus, in my judgment, the New York statute of limitations associated with common law fraud actions, rather than the private cause of action inferred under New York's Blue Sky Law, should be applied to actions arising under § 10(b) and Rule 10b–5. *Cf. Charney v. Thomas,* 372 F.2d 97 (6th Cir. 1967). In addition, this ruling accords with the view that the remedial policies underlying the federal securities laws are best served by a longer rather than a shorter statute of limitations. *See Berry Petroleum Co. v. Adams & Peck, supra,* 518 F.2d at 409.

Therefore, inasmuch as plaintiff commenced this action on August 21, 1975, and the operative events and purported conduct underlying these claims began no earlier than December 4, 1970, the date that the Escrow Agreement was executed, these claims are not barred by the applicable statute of limitations. *See generally Arneil v. Ramsey,* 550 F.2d 774, 780 (2d Cir. 1977).

ii

■ The first claim for relief contained in the amended complaint includes an allegation of violation of § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a). Amended Complaint, ¶ 27; Affidavit of D. Frank Campito, ¶ 23, filed December 1, 1978. The motion for summary judgment made by defendants MLB and McManus seeks dismissal of this claim as well as the claim under § 10(b) and Rule 10b–5 asserted in plaintiff's first claim for relief.

The Court of Appeals, Second Circuit, has recently recognized an implied right of action under § 17(a) of the 1933 Act. *See Kirshner v. United States,* No. 77–6104 (2d Cir. November 30, 1978); *Redington v. Touche Ross & Co.,* 592 F.2d 617 (2d Cir.), *cert. granted,* 439 U.S. 979, 99 S.Ct. 563, 58 L.Ed.2d 649 (1978). *See generally International Brotherhood of Teamsters v. Daniel,* —— U.S. ——, —— n. 9, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979). *But see* 3 L. Loss, Securities Regulation 1781–87 (2d

ed. 1961), *as supplemented,* 6 L. Loss, Securities Regulation 3912–15 (Supp.1969). In addition, the Second Circuit has indicated its view that scienter would not be required to support a private claim brought under § 17(a). *SEC v. Coven,* 581 F.2d 1020, 1025–27 (2d Cir. 1978) (dictum), *cert. denied,* —— U.S. ——, 99 S.Ct. 1432, 59 L.Ed.2d 640 (1979). *See also SEC v. Aaron,* No. 77–6091 (2d Cir. March 12, 1979); 3 L. Loss, Securities Regulation 1766 (2d ed. 1961). *Contra, Sanders v. John Nuveen & Co.,* 554 F.2d 790, 795–96 (7th Cir. 1977); *Fischman v. Raytheon Mfg. Co.,* 188 F.2d 783, 787 n. 2 (2d Cir. 1951); *Weber v. C.M.P. Corp.,* 242 F.Supp. 321, 322–25 (S.D.N.Y.1965).

■■■■ Inasmuch as there is no federal statute of limitations governing a private claim brought under § 17(a) of the 1933 Act, the analysis used with regard to private claims brought under the 1934 Act must be employed. *See, e. g., Newman v. Prior,* 518 F.2d 97, 99 (4th Cir. 1975); *Competitive Associates, Inc. v. Fantastic Fudge, Inc.,* 58 F.R.D. 121, 124 (S.D.N.Y.1973). In my judgment, because of the apparent rule in this Circuit that scienter is not a requisite element of a private claim under § 17(a), the applicable statute of limitations is the one that New York provides for actions to recover upon a liability created by statute or for negligence, *i. e.,* three years. *See* N.Y. C.P.L.R. §§ 214(2), 214(4) (McKinney Supp.1978). In addition, such a limitation period would not, in my judgment, impinge upon the remedial policy behind the federal securities laws. *See, e. g.,* 15 U.S.C. §§ 77m, 78i(e), 78r(c).

■■■ The accrual of this right of action, however, is a matter of federal law. *See Arneil v. Ramsey, supra,* 550 F.2d at 780.

Independent research has revealed no case law on this question that acknowledges a private claim under § 17(a) in the absence of scienter. Therefore, it seems that I am writing on virgin slate and with little guidance. Nonetheless, it is my opinion that the time of accrual for a private claim brought under § 17(a), as defined by the Second Circuit, should be when the violation is complete.[2]

■■■ Plaintiff's indecisive assertion of a claim under § 17(a) appears to be premised on alleged offers or sales by defendants MLB and McManus of securities

> to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading . . . .

Securities Act of 1933, § 17(a)(2), 15 U.S.C. § 77q(a)(2). *See* Affidavit of D. Frank Campito, ¶ 23, filed December 1, 1978. Thus, the violation is complete and the limitation period begins to run once money or property is obtained in contravention of this provision.

Between June of 1971 and February of 1972 plaintiff made full payment to MLB for the shares of Systomation, Inc., stock that are the object of this claim. *See* Amended Complaint, ¶ 17. Therefore, under these circumstances, plaintiff's assertion of a claim under § 17(a) of the 1933 Act in this action, which was commenced on August 21, 1975, was untimely.

### B

■■■ The motion for summary judgment made by defendants MLB and McManus

---

**2.** Even if a discovery accrual time were held to be applicable to this claim, a like result would have been reached. Certainly, the May 10, 1971, amendment to the agreement between MLB and the plaintiff for the purchase of shares of Systomation, Inc., stock, even without attachments, should have put plaintiff on notice that there were restrictions on the purchase and sale of the stock in question. *Cf. Avila Group, Inc. v. Norma J. of California,* 426 F.Supp. 537, 540–41 (S.D.N.Y.1977). More-

over, on July 27, 1971, and on February 8, 1972, plaintiff alleges that he was sent photocopies of Systomation, Inc., stock certificates representing shares held by MLB for the benefit of the plaintiff, which certificates bore restrictive legends. Therefore, by February 8, 1972, plaintiff should have discovered, in the exercise of reasonable diligence, this alleged violation. *Cf. Klein v. Bower,* 421 F.2d 338, 343 (2d Cir. 1970).

also seeks dismissal of plaintiff's second claim for relief, which is brought pursuant to § 12(1) of the Securities Act of 1933, 15 U.S.C. § 77*l*(1). This claim for relief is premised on assertions that defendant MLB is an underwriter within the meaning of § 2(11) of the 1933 Act, 15 U.S.C. § 77b(11), and that defendant McManus is a controlling person of MLB under § 15 of the 1933 Act, 15 U.S.C. § 77o. The substantive allegations of this claim assert that a registration statement was never filed with the Securities and Exchange Commission or in effect in connection with MLB's offer and sale of Systomation, Inc., stock to the plaintiff. *See* 15 U.S.C. § 77*l*(1); Amended Complaint, ¶¶ 29–35; Plaintiff's Memorandum of Law, filed December 1, 1978; Affidavit of D. Frank Campito, ¶ 25, filed December 1, 1978.

Unlike § 10(b) of the Securities Exchange Act of 1934, the Securities Act of 1933 provides an express federal statute of limitations for claims brought pursuant to § 12 of the 1933 Act. Thus, § 13 of the 1933 Act, 15 U.S.C. § 77m, specifies that a claim brought pursuant to § 12(1) must be interposed within one year after the alleged violation occurred, but in no event not more than three years after the security was first offered to the public. *See generally* 15 U.S.C. § 77b(3).

As stated, this claim is time-barred. Plaintiff's exiguous allegations show that the "offers" made by these defendants and complained of in this claim for relief were made no later than July 27, 1971, and February 8, 1972—more than three years prior to the commencement of this action. *See generally Brick v. Dominion Mortgage & Realty Trust*, 442 F.Supp. 283, 289–91 (W.D. N.Y.1977); *Ingenito v. Bermec Corp.*, 376 F.Supp. 1154, 1165, 1173 (S.D.N.Y.1974). Consequently, the claim asserted by the plaintiff in this count of the amended complaint must be dismissed as barred by the applicable statute of limitations.

### C

▇▇▇ Finally, by their motion for summary judgment, defendants MLB and McManus seek dismissal of the seven state-law claims that are asserted in this action under the doctrine of pendent jurisdiction. Inasmuch as plaintiff's amended complaint alleges a claim under § 10(b) of the 1934 Act and Rule 10b–5 promulgated thereunder with jurisdiction founded on 15 U.S.C. § 78aa and 28 U.S.C. § 1331, this Court has the judicial power to entertain related non-federal claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Crane Co. v. American Standard, Inc.*, No. 77–7517 (2d Cir. April 4, 1979). Yet, the exercise of that power is discretionary and should be applied with an eye toward "considerations of judicial economy, convenience and fairness to litigants." *United Mine Workers v. Gibbs, supra*, 383 U.S. at 726, 86 S.Ct. at 1139. *See Federman v. Empire Fire & Marine Insurance Co.*, 597 F.2d 798, 808–810 (2d Cir. April 2, 1979).

▇▇▇ Turning to plaintiff's nonfederal claims, it is my opinion that plaintiff's fifth claim for relief, which is based on § 352–c of New York's Blue Sky Law, N.Y.Gen. Bus.Law § 352–c (McKinney 1968), discussed above, should not be entertained by this Court and is better left for resolution by the courts of the State of New York. *See United Mine Workers v. Gibbs, supra*, 383 U.S. at 726–27, 86 S.Ct. 1130; *Brown v. Knox*, 547 F.2d 900, 903 (5th Cir.), *cert. denied*, 432 U.S. 906, 97 S.Ct. 2950, 53 L.Ed.2d 1078 (1977); *Marchwinski v. Oliver Tyrone Corp.*, 461 F.Supp. 160, 171–73 (W.D.Pa.1978). Similarly, in my judgment, plaintiff's seventh and ninth claims for relief based on conversion and plaintiff's eleventh claim for relief based on Article 8 of New York's Uniform Commercial Code, N.Y. U.C.C. § 8–316 (McKinney 1964) (Purchaser's Right to Requisites for Registration of Transfer on Books), should be asserted in state court. These claims do not arise out of the same nucleus of operative fact as plaintiff's first claim for relief asserted under the Securities Act of 1934 and, in any event, would, if retained along with plaintiff's federal claim, lead to jury confusion. *See United Mine Workers v. Gibbs*,

*supra,* 383 U.S. at 726–27, 86 S.Ct. 1130. Additionally, neither special circumstances nor a substantial commitment of judicial energy prevent this Court from refraining to exercise pendent jurisdiction over these claims. *See, e. g., Kavit v. A. L. Stamm & Co.,* 491 F.2d 1176 (2d Cir. 1974); N.Y. C.P.L.R. § 205(a) (McKinney 1972).

 Plaintiff's sixth claim for relief based on breach of contract, which is asserted against defendants MLB and McManus, and plaintiff's eighth and tenth claims for relief based on common law fraud, which are asserted only against defendant McManus and include a request for punitive damages, however, rest on slightly different footing. These claims arise out of the same transactions and occurrences complained of in plaintiff's first claim for relief and might ordinarily be expected to be tried together. *See United Mine Workers v. Gibbs, supra,* 383 U.S. at 725, 86 S.Ct. 1130. Nevertheless, these interrelated state-law claims, particularly plaintiff's claim for punitive damages, will give rise to issues not before this Court by virtue of plaintiff's claim under the 1934 Act. Although not insurmountable, a possibility of jury confusion would exist if these claims are retained. Therefore, under all these circumstances, it is my opinion that judicial economy and the administration of justice will be best served if these nonfederal claims are tried along with plaintiff's fifth, seventh, ninth, and eleventh claims for relief in the courts of the State of New York. *See, e. g., Gerlach v. Michigan Bell Telephone Co.,* 448 F.Supp. 1168, 1173–74 (E.D.Mich.1978).

## CONCLUSION

In summary, that part of the motion for summary judgment made by defendants MLB and McManus that seeks dismissal of plaintiff's first claim for relief insofar as it is premised on § 17(a) of the 1933 Act, 15 U.S.C. § 77q(a), and plaintiff's second claim for relief, which is based on § 12(1) of the 1933 Act, 15 U.S.C. § 77*l*(1), is granted and the claims are dismissed as barred by the applicable statute of limitations. In addition, the Court declines to exercise pendent jurisdiction over plaintiff's fifth, sixth, seventh, eighth, ninth, tenth, and eleventh claims for relief and they are dismissed, without prejudice to prosecution in state court, in accordance with this decision. Furthermore, finding that lack of an immediate appeal on the novel issues raised by these claims may be unjust to the plaintiff and that there is no just reason for delay, judgment shall enter in favor of defendants MLB and McManus to the extent indicated above. *See* Fed.R.Civ.P. 54(b); *Brunswick Corp. v. Sheridan,* 582 F.2d 175, 183 (2d Cir. 1978). Finally, the remainder of the motion for summary judgment made by these defendants is hereby denied and dismissed.

It is so Ordered.